**WISHNICK–TUMPEER, Inc., v. HELVER-ING.**

**No. 6015.**

United States Court of Appeals for the District of Columbia.

Argued Feb. 7, 1934.

Decided March 12, 1934.

On Rehearing June 10, 1935.

Joseph R. Little, of Washington, D. C., for petitioner.

Sewall Key, Walter L. Barlow, S. Dee Hanson, E. Barrett Prettyman, Shelby S. Faulkner, and Roy N. McMillan, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Petitioner, whom we shall call Tumpeer, was an Illinois corporation, and, prior to November 1, 1928, and thereafter, owned in excess of 95 per cent. of the stock of Pioneer Asphalt Company, also an Illinois corporation, whom we shall call Pioneer. Both Tumpeer and Pioneer filed separate returns for the taxable year 1928 on the basis of their regular accounting periods, which were, as to Tumpeer, the calendar year, and, as to Pioneer, the fiscal year ending October 31. Tumpeer on May 28, 1929, asked for and was granted permission by the Commissioner to change its taxable year from the calendar year to a fiscal year ending June 30, with a provision in such permit that in order to effect the change Tumpeer would be required to file a return on or before September 15, 1929, covering the period January 1, 1929, to June 30, 1929. Tumpeer, with the consent of Pioneer, duly filed a consolidated return for the period ending June 30, 1929. This return included its net income for the period January 1 to June 30, 1929, the net income of another affiliate whom we need not notice, and the net income of Pioneer for the eight months' period November 1, 1928, to June 30, 1929. In computing the income of Pioneer, there was deducted a net loss admittedly sustained by that company for the fiscal year ending 1927, no portion of which had been used to offset its income for the taxable year ended October 31, 1928. Tumpeer deducted this net loss from the income of Pioneer for the period November 1, 1928, to June 30, 1929. The Commissioner held that this was not permissible and apportioned the income for the eight months' period between the two months November and December, 1928, and the six months, January to July, 1929,

and allowed the 1927 net loss against the income allocated to November and December, but denied the right to offset the remainder against the income for the period January to July, 1929. The effect of this was to reduce the allowable deduction in computing the consolidated taxable net income for the year ended June 30, 1929. The Commissioner accomplished this result by treating the period November and December, 1928, as a separate taxable year.

The single question, therefore, we have to determine is whether his action in this respect was correct. The answer to this involves an examination of the provisions of the income-tax laws as to accounting periods, particularly with reference to those allowing net losses to be spread over a three-year period, and, more particularly, with reference to the Revenue Act of 1928 so far as it relates to the right of affiliated corporations to file a consolidated return. The act in specific terms (section 141 (a), 45 Stat. 831, 26 USCA § 2141 (a) extends the privilege upon the condition that all the corporations for which the return is made "consent to all the regulations under subsection (b) prescribed prior to the making of such return." Subsection (b), 45 Stat. 831, 26 USCA § 2141 (b), reads as follows:

"The Commissioner, with the approval of the Secretary, shall prescribe such regulations as he may deem necessary in order that the tax liability of an affiliated group of corporations making a consolidated return and of each corporation in the group, both during and after the period of affiliation, may be determined, computed, assessed, collected, and adjusted in such manner as clearly to reflect the income and to prevent avoidance of tax liability."

The Commissioner, acting under the authority of the statute, promulgated certain rules in relation to the subject, known as Regulations 75. One of such rules (art. 14) entitled, "Accounting Period of an Affiliated Group," reads as follows:

"The taxable year of the parent corporation shall be considered as the taxable year of an affiliated group which makes a consolidated return, and the consolidated net income must be computed on the basis of the taxable year of the parent corporation."

Another (art. 13 (g) reads:

"If a corporation, during its taxable year, becomes a member of an affiliated group, its income for the portion of such taxable year not included in the consolidated return of such group must be included in a separate return."

And still another (art. 41 (d) reads:

"Any period of less than 12 months for which either a separate return or a consolidated return is filed * * *, shall be considered as a taxable year."

We have, therefore, here a case in which corporations, though affiliated, had consistently filed separate returns. In the case of the parent corporation, the basis of its accounting period was the calendar year, and in the case of its affiliate the fiscal year ending October 31. After the passage of the 1928 law, Tumpeer (the parent company) asked for and received permission to change its accounting period for 1929 from the calendar year to the fiscal year ending June 30. It had filed a separate return for the calendar year January 1 to December 31, 1928. Its return-period, therefore, for the taxable year 1929 was January 1 to June 30, and this period, giving effect to the regulation of the Commissioner quoted above, likewise determined the taxable year of its affiliates. It was therefore ruled by the Commissioner that the act and the regulations required that Pioneer must file, or be treated as having filed, a separate return for the period between the end of its former separate return-period and the commencement of the taxable year of its parent, i. e., November and December, 1928.

The position of Tumpeer is that the term "taxable year" as used in section 117 of the Revenue Act of 1928, 26 USCA § 2117, does not mean a fraction of a year, as the Commissioner contends, but does mean a full twelve months' period, and that since a corporation retains its separate entity as a taxpayer irrespective of affiliation, the latter state cannot, under any regulation of the Commissioner, deprive it of the right to deduct for two succeeding years its own net loss from its own net gain.

Section 117 (b), 45 Stat. 825, 26 USCA § 2117 (b), provides:

"If, for any taxable year, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount thereof shall be allowed as a deduction in computing the net income of the taxpayer for the succeeding taxable year (hereinafter in this section called 'second year'), and if such net loss is in excess of such net income (computed without such deduction), the amount of such excess shall be allowed as a deduction in computing the net income for

the next succeeding taxable year (hereinafter in this section called 'third year'); the deduction in all cases to be made under regulations prescribed by the Commissioner with the approval of the Secretary."

This position of Tumpeer is the crux of the case.

The net loss-extension provision was first inserted in the Revenue Act of 1918, and has continued practically unchanged, except that in 1921 the right to make the deduction was extended from the next succeeding year to the next two succeeding years, and it was not until the Revenue Act of 1924 that the term "taxable year" was defined, but in that act and in succeeding acts, including the act of 1928, "taxable year" was defined to include, in the case of a return made for a fractional part of a year, the period for which such return was made (section 48 (a), 45 Stat. 807, 26 USCA § 2048 (a).

Tumpeer insists, however, that the legislative history and the reports of the committees of Congress indicate that the congressional intent in thus defining the term was to broaden rather than to narrow the rights of taxpayers; that the provision was inserted as a measure of relief for taxpayers required by uncontrollable circumstances to make a return for a period of less than a full year; and that it was never intended to limit the period of the loss carry-over under two years of twelve months each. In short, it is argued that Congress, first of all, extended the loss deduction period two years, and then, to make it apply in the case of a taxpayer commencing operation within the year, or discontinuing or dissolving, defined the term "taxable year" as the period for which a return was made—though less than twelve months—to include within its provisions taxpayers thus circumstanced. And so it is insisted here it never was intended to limit the carry-over period, or deny its benefits to a taxpayer voluntarily but as the result of affiliation changing its accounting period. So it is said that since each taxpayer remains such in his own right, the accounting practice of each corporation at the commencement of affiliation should be followed, though it involves separate returns for different periods of the year, and that each such corporation in such circumstances is entitled to its own deductions for its accounting period, because otherwise the mere fact of affiliation would deprive it of the rights granted by the net-loss provisions of the statute.

The argument is plausible, and the question is not without difficulty, for it is undeniable that Pioneer, had it continued to file a separate return, would have been entitled to deduct the losses of 1927 in its return for its fiscal year November 1, 1928, to November 1, 1929, and it is equally undeniable that, if the Commissioner's position is correct, the making of a consolidated return has lost it this right, for the Commissioner's ruling is to take away from it something which in its state before affiliation the law gave it, and this brings us back to the questions, first, whether the interpretation of the regulations by the Commissioner is correct, and, second, if correct, whether the regulations themselves are valid.

To answer these questions we look to the statute. First, was the Commissioner correct in requiring a separate return from Pioneer for the two months' period ending December 31, 1928? The answer to this is that the Commissioner's regulation (article 14, regulations 75) specifically so provides, for it says that the taxable year of the parent corporation shall be also the taxable year of the affiliates, and since, as appears already, the first taxable year of Tumpeer under the consolidated status began January 1, 1929, it is perfectly clear that the regulation required its affiliates to make their returns on the same basis of time. In the case of Pioneer this left an unaccounted-for period. Obviously, some sort of return was necessary to cover this period, and that it should be a separate return seems to us to be specifically required in (g) of article 13 of regulations 75, which provides: "If a corporation, during its taxable year, becomes a member of an affiliated group its income for the portion of such taxable year not included in the consolidated return of such group must be included in a separate return." Little more need be said as to this. Here Pioneer's taxable year was the fiscal year November 1 to October 31. In September, 1929, it consented in writing to the filing by Tumpeer of a consolidated return, and likewise it agreed to be bound by the Commissioner's rules. This, of course, was an assent to a change of its taxable year period to conform to that of Tumpeer, its parent. It was, therefore, an agreement "during its taxable year" to become a member of an affiliated group for the purpose of filing consolidated returns, and, by the express terms of the provision of the regulations, it became its duty to cover the in-

termediate period, that is to say, the period from its last return to the commencement of the new consolidated tax year, by filing a separate return, and since Congress specifically extended the privilege of filing a consolidated return on condition that the corporations availing of it should thereby consent to all the regulations the Commissioner may prescribe, it is plain to us the taxpayer may not now question the rules of the Commissioner. As was said by the Supreme Court in Woolford Realty Co. v. Rose, 286 U. S. 319, 330, 331, 52 S. Ct. 568, 571, 76 L. Ed. 1128: "The Revenue Act of 1928, § 141 (b), 26 USCA § 2141 (b), protects against unfair evasions in the making of consolidated returns by increasing the discretionary power of the Commissioner in prescribing regulations." The authority, of course, must be used fairly and so as not to do any violence to the provisions of the statute, but having regard to the possibilities which the contention of the taxpayer here would lead to in the way of extending the return beyond even the two-year period, we are convinced that, in requiring a separate return and in treating the period embraced within it as one of the two years permitted for the loss carry-over, nothing in the regulations can be said to be violative of the intent of Congress under the provisions of section 117 (b), supra. By both statute and regulations (Act 1928, section 48 (a), supra; reg. 75, art. 41 (d), the taxable year is defined to be the period for which a return is filed, though only a fractional part of the year. The language is plain, and there is no need for resort to any other source to discover its meaning. The argument of Tumpeer would require us to reject the ordinary rule of interpretation and to say that the words used should be given no effect because to do so would defeat the obvious purpose of Congress to permit net losses to be spread over a full three-year period. This we do not feel we may properly do.

Tumpeer as a second point suggests that, since admittedly Pioneer might have taken the entire loss without question by filing a separate return, the rejection by the Commissioner of the return filed is in effect a decision that it had not assented to the filing of a consolidated return; in other words, that the only return it consented to file was the one it actually filed, which was a single return for the entire period November 1, 1928, to June 30, 1929, whereas the ruling of the Commissioner that it should have filed two returns, one covering the two months' and the other the six months' period, is the equivalent of saying that it had not complied with the regulations and had not filed a consolidated return. It is argued from this that the return filed should be treated as a separate return, in other words, that having filed what it believed to be a consolidated return under a misapprehension of its rights, it had a right when apprized of this fact to have its return treated as a separate return; but we think there is nothing in this point. We find in the decision of the Board that Pioneer duly authorized and consented to the filing of a consolidated return on its behalf. This was a binding election, and is not recallable because Pioneer misunderstood the requirements to effectuate the purpose.

The finding and conclusion of the Board are affirmed.

Affirmed.

## On Rehearing.

Our former opinion was filed March 12, 1934. Shortly thereafter, and before our mandate had gone down, the government applied to the Supreme Court for certiorari in Morgan's Inc., v. Helvering, Commissioner (C. C. A.) 68 F.(2d) 325. The petition assigned as the reason for granting the writ that:

"The decision below is in direct conflict with the decision of the United States Court of Appeals for the District of Columbia in Wishnick-Tumpeer, Inc. v. Commissioner, decided March 12, 1934. Although the Wishnick-Tumpeer case arose under the Revenue Act of 1928, and invoked the provisions of Regulations 75, there is, we submit, no basis of distinction between the two cases on this ground. In each case the ultimate question is the meaning of the words 'taxable year' as used in the applicable section of the statute."

Certiorari was granted, and the decision of the First Circuit Court of Appeals affirmed November 5, 1934. 293 U. S. 121, 55 S. Ct. 60, 79 L. Ed. ——.

We granted a rehearing. On rehearing the government reversed its former position and now insists there *is* a distinction between the two cases. This Laodicean policy does not commend itself to us, but we doubt if it can be made to justify a refusal to examine the question for ourselves.

In Morgan's Case that corporation, on June 1, 1925, acquired the voting stock of Haines Corporation. Both corporations were previously on the calendar-year basis,

and in filing their 1926 returns Haines filed a separate return for the first five months of 1925 and the two corporations filed consolidated returns for the last seven months of that year and for the years 1926 and 1927. In 1925 and in 1926 Haines sustained net losses. In 1927 it made a net profit. Its net loss in the first five months of 1925 (before affiliation) was shown in a separate return for that period. Its net losses for the last seven months of 1925 and for the year 1926 were shown in the consolidated returns of the two corporations for those periods. In the consolidated return for 1927 Haines brought forward its loss for the first five months of 1925 and deducted it from its net income in 1927. The Commissioner disallowed the deduction on the ground that the separate return covering the first five months of 1925 and the consolidated return for the last seven months of 1925 covered two separate taxable years within the meaning of the statute—resulting in making the third-year carry-over expire in 1926.

In our case the two corporations in question were affiliated, in the sense that Tumpeer owned 95 per cent. of Pioneer for a period prior to the time in question, but both companies had during that period filed separate tax returns. Tumpeer's tax period was the calendar year, and Pioneer's the fiscal year ending October 31. Tumpeer in 1929 was granted permission by the Commissioner to change its taxable year from calendar year to a fiscal year ending June 30, provided it filed its return for that year (1929) on or before September 15, covering the period of January 1 to June 30, 1929. Tumpeer, with the consent of Pioneer, then filed a consolidated return. The return included the net income of Tumpeer from January 1 to June 30, 1929, and the net income of Pioneer for the eight-months period November 1, 1928, to June 30, 1929. In Pioneer's return there was deducted a loss sustained in 1927, no portion of which had been used to offset its income in the year ending October 31, 1928. The Commissioner held that this was not permissible, treated Pioneer's return as a separate return for the period November 1 to December 31, 1928, and allowed the 1927 net loss against the net income allocated to the November-December period, but denied the right to offset the remainder against the income for the period January to July, 1929; and this result was accomplished, as in Morgan's Case, by treating the period November and December, 1928, as a separate taxable year.

The statement of facts in Morgan's Case and this case, to the extent we have gone, shows the cases are identical.

In Morgan's Case the Supreme Court held the Commissioner's decision wrong on the ground that the "taxable year" in the carry-over statute was a twelve-months period, and that a return made, under the circumstances of that case, for a shorter period did not constitute such period a separate taxable year.

And if this were all, it would be manifestly our duty to recall our former opinion and to conform it to the views of the Supreme Court. But in the view we take there are other facts and considerations, to which we shall refer, which when fairly weighed distinguished the two cases and make the rule in the one inapplicable in the other; and this, we think, was the view of the Supreme Court as indicated by the only two references to this case in the opinion in Morgan's Case.

Morgan's Case arose under the Revenue Act of 1926; our case under the Revenue Act of 1928. There is no substantial difference in the two acts in definition of taxable year, or loss carry-over, but in other respects there are material differences both in the acts and in the Treasury Regulations made pursuant to statutory authority.

Section 141 (Act of 1928, c. 852, 45 Stat. 791, 831, 26 USCA § 2141), is new. It provides as follows:

"(a) An affiliated group of corporations shall, subject to the provisions of this section, have the privilege of making a consolidated return for the taxable year 1929 or any subsequent taxable year, in lieu of separate returns. The making of a consolidated return shall be upon the condition that all the corporations which have been members of the affiliated group at any time during the taxable year for which the return is made consent to all the regulations under subsection (b) prescribed prior to the making of such return; and the making of a consolidated return shall be considered as such consent. In the case of a corporation which is a member of the affiliated group for a fractional part of the year the consolidated return shall include the income of such corporation for such part of the year as it is a member of the affiliated group.

"(b) The Commissioner, with the approval of the Secretary, shall prescribe such regulations as he may deem necessary in order that the tax liability of an affiliated

group of corporations making a consolidated return and of each corporation in the group, both during and after the period of affiliation, may be determined, computed, assessed, collected, and adjusted in such manner as clearly to reflect the income and to prevent avoidance of tax liability."

Pursuant to this authority, the Commissioner promulgated Regulations 75. We quote the applicable sections, as follows:

"Art. 13 (g).—If a corporation, during its taxable year, becomes a member of an affiliated group, its income for the portion of such taxable year not included in the consolidated return of such group must be included in a separate return. * * *

"Art. 14.—The taxable year of the parent corporation shall be considered as the taxable year of an affiliated group which makes a consolidated return, and the consolidated net income must be computed on the basis of the taxable year of the parent corporation.

"Art. 41 (d).—Any period of less than 12 months for which either a separate return or a consolidated return is filed, under the provisions of article 13, shall be considered as a taxable year."

By reference to the above, it will be seen that Congress, in the 1928 Act, authorized the Commissioner to prescribe specific regulations to determine the tax liability of an affiliated group of corporations seeking permission to make a consolidated return, and made the acceptance of the regulations by the applicant corporations a condition precedent to the right to file consolidated returns. And it will also be seen that the Commissioner's regulations, made pursuant to this authority, provide that where there is affiliation for the purpose of filing consolidated returns, and such returns are filed during the taxable year of one of the corporations, its return for the period of the year not included in the consolidated return shall be made separately; also that the taxable year of the parent shall be the taxable year of the affiliate; and that any period of less than twelve months for which either a separate or consolidated return is filed shall be a taxable year. These conditions, in their entirety, exactly fit the case of petitioner here. Tumpeer and Pioneer became affiliated for the purpose of consolidated taxation in the year 1929. Tumpeer is the parent. It duly applied to the Commissioner for permission to change its taxable year from calendar year to fiscal year. With the consent of Pioneer, it filed a con-

solidated return. By the terms of the Commissioner's permit, its taxable year for its 1929 return was January 1 to June 30. Pioneer, in order to conform to the regulations, was obligated to file a separate return to cover the last two months of 1928—the months not included in the taxable year of its parent. Under Article 41 (d) of the regulations, this separate-period return embraced a taxable year.

It therefore follows that, if the Commissioner's regulations are to be given the force of law, the government's position is, as we formerly held, in all respects correct.

Is there, then, anything in Morgan's Case to negative this conclusion? We think not. That case turned upon the construction of section 200 (a) of the 1926 Act. The section defines the term "taxable year" to include a fractional part of a year for which a return is made. The Supreme Court construed the word "includes," not as synonymous with "means," but as the equivalent of "comprehends" or "embraces," and found support in other provisions of the act for this construction; but it is perfectly obvious that if the court had construed the word "includes" as "means," the conclusion reached would have been different. The ambiguity which the Supreme Court found in the 1926 Act, and resolved in favor of the taxpayer, is wholly absent in the 1928 Act and Treasury Regulations, when considered together; for in the latter there is the express and positive command that the fractional part of the year for which the return is made "shall be considered as a taxable year." And if Congress had the right to limit or restrict the carry-over privilege, as to which there can be but one answer, it had the same right to confer that power on the Commissioner. Congress, unquestionably inserted the new provisions in the 1928 Act to clarify administrative procedure under the former act and to substitute, in place of a definite provision, rules to be made by the Commissioner which would be optional in the case of corporations changing from separate to consolidated returns and, sometimes, involving in the change wholly different tax periods; and, in this view, petitioner's case is brought precisely within the scope of the purpose. In Morgan's Case the taxpayers' taxable year (parent and affiliate), both before and after the year of affiliation, was the calendar year, and the filing of returns for fractional parts of the year did not involve any change in either of the taxpayers' accounting years

780

and, so far as the question here involved is concerned, had no effect upon the actual net income, or the amount of tax. In the instant case, Tumpeer's previous taxable year was the calendar year, and Pioneer's the fiscal year ending October 31.

The application of Tumpeer involved a complete change in accounting periods of both parent and affiliate. The consent was a concession for which the Commissioner had the right to demand terms. The conditions were that Pioneer should file a separate return for the period prior to affiliation and that such return should be considered as covering a tax year. In effect, he said to petitioner—if the returns of Pioneer for the two months prior to affiliation and the six months of affiliation be considered as a single return, the result will be to permit its entire loss carry-over to be set off against earnings of only eight months; and this will not correctly reflect its tax for the reason that a return for that period will not correctly reflect its income. True, to this it may be said—neither does the regulation; but, since the regulation must apply generally, it is not enough to say that in a particular case—where it is optional and not coercive—it is invalid because it deprives a taxpayer of something which otherwise he would be entitled to. An occasional hardship is inescapable. It was the recognition of this fact, doubtless, which induced Congress in 1928 to enlarge the power of the Commissioner to make specific rules to apply when a change of accounting period like that involved here is asked as a matter of grace. It is true that in this case, as was true in Morgan's Case, if Pioneer had not taken advantage of the provision authorizing consolidated returns, it would have been permitted to carry over its net loss of 1927 for the next two succeeding years; but, even in that event—the two succeeding years would have embraced two full years and not, as in the present case, a materially shorter time.

All of this we mention as giving substance to our assumption that Congress, in the 1928 provisions, had a definite purpose in view. The regulations authorized to carry out the purpose were intentionally made optional. An affiliated corporation could take them or leave them, as appeared to it advantageous. This was as nearly a fair and equitable arrangement as the difficulties inherent in the situation made possible; and we can think of no reason, and certainly can find none in Morgan's Case,

to justify our saying that the regulations so made are invalid.

Petitioner, having exercised its option and consented to be bound, will not now be heard to complain, and in this view we have no other course than to adhere to our former opinion.