## FRANCE CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7098.

Circuit Court of Appeals, Sixth Circuit.

March 9, 1937.

John J. Kendrick, of Toledo, Ohio (Cletus V. Wolfe, of Toledo, Ohio, on the brief), for petitioner.

W. F. Wattles, of Washington, D. C. (Frank J. Wideman, Sewall Key, and Ellis N. Slack, all of Washington, D. C., on the brief), for respondent.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

Petition by the France Company to review the decision of the Board of Tax Appeals affirming the action of the Commissioner of Internal Revenue in assessing a deficiency in petitioner's income taxes for the year ending December 31, 1929, in the sum of $6,683.99.

The petitioner's business was the operation of limestone quarries and the sale of the products thereof. During the years 1924 and 1925, it acquired for $29,100 the entire capital stock of the Bascom Quarries Company (herein called Bascom) operating a similar business. This stock consisted of 400 shares of the par value of $100 each.

Petitioner held the Bascom stock until 1929. The officers of the two companies were largely the same and their business was conducted from the same office by the same men.

918

At the annual meeting of the stockholders of Bascom on January 2, 1929, an agreement for the sale of its assets to petitioner was authorized, and after requisite authority from the stockholders of petitioner voted on January 18, 1929, the agreement was formally executed "as of" the second day of January, 1929. Bascom was designated therein as the seller and petitioner as the purchaser.

The contract contained the following provisions:

"1. The Seller agrees to and does hereby sell to the Purchaser and the Purchaser agrees to and does hereby purchase from the Seller, the entire assets and property of the Seller including accounts receivable and cash on hand existing at the close of business on December 31st, 1928.

"2. The Seller will accept and the Purchaser will pay for such assets and property the sum of $51,598.90 payable as follows: $40,000.00 thereof by the endorsement and surrender for cancellation to the Seller of 400 shares of its common capital stock being all of the outstanding shares of the Seller, and the balance of said purchase price by the assumption and payment of the indebtedness due and owing by The Bascom Quarries Company at the close of its business on December 31st, 1928, amounting to $11,598.90. The Purchaser will also assume, do and perform all of the obligations agreed to be done and performed by the Seller in any and all contracts that shall be assigned by the Seller to the Purchaser pursuant to the terms of this agreement."

Paragraph 3 provided for the execution of instruments of conveyance and in paragraph 4 the purchaser agreed upon their receipt to surrender the stock certificates.

In January and February, 1929, pending the execution and delivery of the instruments, Bascom continued to make sales, issue checks, and incur expenses. The profits from these operations were not segregated from petitioner's income, but were embraced in its return for the year 1929 without demarcation. An entry on petitioner's books recording the transfer to it of the assets and liabilities of Bascom was made on February 21, 1929; and on March 1, 1929, a second entry credited petitioner with Bascom's check for $2,160.13. This entry was "to transfer business transacted by the Bascom Quarries Company for The France Company from January 1 to February 28, 1929." Bascom conducted no operations in its own name after March 1st.

On April 15, 1929, Bascom acknowledged a bill of sale "as of this 2nd day of January A. D. 1929," transferring to petitioner all its assets of cash, accounts receivable, equipment, land, buildings, etc., and on the same date executed a deed transferring its real estate. The capital stock was canceled in October. The Bascom stockholders and directors ratified the conveyances of its property on October 29, 1929, and also passed a resolution to dissolve the corporation and directed the officers to take the necessary steps to that end.

It cannot be doubted that these transactions effected a complete liquidation of Bascom. Such was their purpose. Therefore the assets which were distributed to the petitioner, the sole stockholder, must be treated in full payment for the 400 shares of Bascom stock which were delivered in exchange therefor. Revenue Act, 1928, c. 852, 45 Stat. 791, § 115(c), 26 U.S.C.A. § 115 note. Section 112 of the act (26 U.S.C.A. § 112 and note) provides that the entire amount of the gain to petitioner in such a transaction shall be recognized. By section 111(a) (c) and section 113(a) of the act (26 U.S.C.A. §§ 111(c) and note, 113 note) the gain to petitioner for the indorsement and surrender of its stock is the excess of the amount realized therefrom over its cost.

According to petitioner's journal, the net book value of the assets transferred to it in exchange for the 400 shares of Bascom was $89,863.53. This reflected a gain over the cost of the stock of $60,763.53 and the resulting deficiency.

Petitioner placed other interpretations upon the transaction. One contention is that instead of being a distribution it represents a "bargain sale" of the Bascom assets. Taplin v. Com'r, 41 F.(2d) 454 (C.C.A.6), and Com'r v. VanVorst, 59 F.(2d) 677 (C.C.A.9), are cited in support.

In the Taplin Case stock of the Standard Company valued at $30 a share was owned and sold by the Cleveland Company to a few of its stockholders at $7 per share, the cost to it. Minority stockholders received none of the stock. In the instant case there was only one stockholder, the petitioner, and the assets of Bascom went to it as stock owner and not as a favored recipient. A further significant distinction between the two cases is that the Cleveland Company continued business after the "bargain sale," whereas Bascom dissolved.

In the Van Vorst Case the corporation sold to its principal stockholders certain real estate at a very favorable reduction under the market value. Here again the other stockholders did not participate and there was no evidence that the corporation thereafter underwent dissolution.

Petitioner insists that there was no delivery of the Bascom assets to it until the bill of sale and deed were executed on April 15, 1929; that up to that time Bascom was the owner of its assets and liable in that year for the tax accruing on the profits thereof.

Petitioner misses the point. The tax involved was not assessed on the profits of any part of the year's business, but upon the gain derived from the distribution of assets. The Board found that this distribution was made as of January 2, 1929, and, as indicated above, there was ample evidence to support the finding.

██ Petitioner urges that it and Bascom were affiliated corporations (Revenue Act, 1928, § 142(c), 45 Stat. 832) and that it was therefore entitled to have its return for 1929 treated as a consolidated return and when so treated it would be entitled to the benefit of Treasury Regulation 75, Art. 37(a), promulgated pursuant to section 141 (b) of the Revenue Act of 1928 (26 U.S.C. A. § 141(b) and note); but its difficulty is that it did not itself consider the 1929 return as a consolidated one. It filed a separate return for 1929 and made no effort therein to segregate the income from the business of the two companies. To the question on the form, "Is this a consolidated return of two or more corporations?" it answered "No." To the next question, "Did the corporation file a consolidated return for the preceding taxable year?" it answered "No."

Bascom adopted the same attitude. It filed a separate return for 1929, reporting no income and no deductions. It wrote on the margin "as of January 1, 1929, The France Co. acquired all of the assets and assumed all of the indebtedness of this corporation, by surrendering for cancellation all of this corporation's outstanding stock. This corporation was dissolved during 1929."

The making of a consolidated return is a privilege (Revenue Act 1928, c. 852, § 141(a), 45 Stat. 791, 831, 26 U.S.C.A. § 141(a) and note) and the observance of the regulations authorized by the act and prom-ulgated by the Commissioner (Reg. 75, Arts. 10(a), 12(a) (b), and 31) was a condition precedent to the right to file such return. See Wishnick-Tumpeer v. Helvering, 64 App.D.C. 295, 77 F.(2d) 774, 779. Neither corporation made any pretense of complying with these regulations. Their attitude was entirely consistent with the position of the Commissioner, upheld by the Board, that 1929 was not a consolidated return period; that the contract between petitioner and Bascom terminated affiliation and no right to file a consolidated return existed thereafter. To support its contention that its 1929 return should be treated as a consolidated one, petitioner cites American Pacific Whaling Co. v. Com'r, 74 F.(2d) 613, 616 (C.C.A.9), but in that case the court expressly held on the facts "that the ownership of the property of the Washington" (affiliated) "company remained in that company until it was dissolved" and that the income of the parent was "attributable to the property of the Washington." There is no such inference here.

The order of the Board of Tax Appeals is affirmed.