SEYMOUR H. KNOX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65203.   Promulgated January 24, 1936.

*Ralph M. Andrews, Esq.*, for the petitioner.
*W. E. Davis, Esq.*, for the respondent.

### OPINION.

MURDOCK: The Commissioner determined a deficiency of $70,384.19 in the petitioner's income tax for the year 1929, but now concedes that the petitioner's profit on the sale in 1929 of 120 rights to purchase National City Bank stock was $6,218.27, instead of $13,799.64, the amount used by the Commissioner in determining the deficiency, and that the petitioner sustained a loss of $1,678.74 on the sale in 1929 of 25 shares of American Steamship Co. stock. The only issue for decision by the Board is whether or not the petitioner sustained a deductible loss of $331,976.80 in 1929 from the disposition of 11,550 shares of the capital stock of Marine Midland Corporation (hereafter referred to as Midland) to Marine Equities Corporation (hereafter referred to as Equities). Most of the facts have been stipulated and none are in dispute. The Commissioner disallowed the loss on the ground that the disposition of the shares by the petitioner was not a sale but an exchange within the provisions of section 112 (b) (5) of the Revenue Act of 1928. He amended his answer to allege affirmatively that if the shares were sold by the petitioner, the loss was nondeductible because of the "wash sales" provisions of section 118 of the Revenue Act of 1928. The facts need not be stated in full.

The petitioner purchased 2,000 shares of Midland common stock on September 18 and 19, 1929, for $166,025. He also purchased 10,000 shares of the same kind of stock on October 16, 1929, for $600,000. He sold on October 24, 1929, on the market to outsiders for $26,910.70, 450 of the 2,000 shares acquired in September.

Persons other than the petitioner incorporated Equities on November 12, 1929. This corporation had authority to acquire, hold, sell,

and deal generally in and with all forms of securities. It was organized for the purpose of trading in and stabilizing the stock of Midland, which held a controlling stock interest in a number of banks. The petitioner subscribed for 11,550 shares of the stock of Equities at $35.275 per share on November 18, 1929, and on the same day gave his check for $407,426.25 to Equities in payment of his subscription. "Petitioner at that time was advised that Marine Equities Corporation intended thereafter to offer to acquire from him 11,550 shares of Marine Midland Corporation in consideration of the issuance to him of its check for $407,137.50." The petitioner, in a separate transaction, delivered his 11,550 shares of Midland common stock to Equities on November 19, 1929, and received from Equities its check for $407,137.50, or $35.25 a share. This was the market price of the stock at that time as shown by transactions on the New York Curb Exchange and on the Buffalo Stock Exchange.

Equities at or about the same time purchased Midland stock from its other stockholders until it owned 36,800 shares. It had 36,800 of its shares outstanding at that time. Thereafter it bought and sold about 1,000 shares of Midland stock on the open market. It also sold some of its own shares to and bought Midland shares from two new stockholders in December 1929. As it received dividends on the Midland stock which it held, it declared corresponding dividends to its own stockholders.

Over 5,000,000 shares of Midland stock were outstanding on November 19, 1929. The petitioner did not reacquire any Midland stock within 30 days prior or subsequent to November 19, 1929, and had no contract or option to acquire such stock from Equities or any other source at November 19, 1929, or later.

The petitioner kept his accounts and filed his income tax returns on the cash receipts and disbursements basis. He filed his return for the calendar year 1929 with the collector of internal revenue at Buffalo, New York. He claimed on that return a loss of $84,726.80 on the sale of the 2,000 shares of Midland stock which he purchased in September 1929, 450 of which he sold on October 24, 1929, on the market and 1,550 of which he sold to Equities on November 19, 1929, and he also claimed a further loss of $247,250 on the sale of 10,000 shares of Midland acquired on October 16, 1929, which he sold to Equities on November 19, 1929. The Commissioner, in determining the deficiency, disallowed these losses in their entirety upon the ground that all of the shares had been transferred to Equities in an exchange coming within the provisions of section 112 (b) (5) of the Revenue Act of 1928, so that no loss was recognized.

The stockholders of Equities, on May 17, 1930, decided to dissolve and on the same day the assets of the corporation were distributed pro rata among its stockholders. The petitioner received 11,490 shares of Midland stock and $2,557 in cash. The president of Equities, in recommending dissolution, stated that the purpose for which the corporation had been organized, i. e., to trade in and stabilize the stock of Midland, had been fulfilled.

The petitioner entered the 11,490 shares of Midland stock on his books at its then market value, $40.50 per share, and reported a profit for 1930 from the dissolution of Equities of $60,475.75. The Commissioner made no adjustment of the profits so reported for 1930.

The evidence indicates that the transactions here in question were not entered into for the purpose of avoiding taxes. The parties had other purposes in mind and apparently gave no thought to any tax question. The petitioner has testified without equivocation or contradiction that he had no agreement or option, express or implied, to reacquire the Midland shares. Cf. *Commissioner* v. *Dyer*, 74 Fed. (2d) 685. The Commissioner at no time has contended or even suggested that any of the transactions were fraudulent. Every step was real, genuine, and in no sense lacking in bona fides. The petitioner actually sold his Midland shares and sustained a loss of $331,976.80 in 1929.

The respondent's first principal contention is that the form of the transactions whereby the petitioner and others obtained shares of Equities and shortly thereafter transferred a corresponding number of shares of Midland stock to Equities should be ignored and the substance and effect of those transactions should be regarded as controlling. He argues that in substance and effect the petitioner and other stockholders of Midland exchanged their Midland stock share for share for the stock of Equities. Section 112 (b) (5) provides that "no gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation", provided that "the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange." However, neither the facts nor the authorities support this argument of the Commissioner. What was done should be the test. *United States* v. *Phellis*, 257 U. S. 156; *Anna M. Harkness*, 1 B. T. A. 127. The petitioner did not exchange his Midland stock for Equities stock. Cf. *Katherine A. Spalding*, 7 B. T. A. 588; *Sarthler Grocery Co.*, 22 B. T. A. 1273; affd., 63 Fed. (2d) 68. He purchased Equities stock for cash in one transaction and later in another transaction Equities purchased his Midland

stock for cash. These two transactions may not be regarded as one for the purpose of imposing a tax. *Daisy M. Ward*, 29 B. T. A. 1251; affd., 79 Fed. (2d) 381; *Georgia Savings Bank & Trust Co., Executor*, 28 B. T. A. 1153, 1164. If the petitioner had realized gain from the disposition of his Midland shares, the Commissioner would no doubt contend that section 112 (b) had no application and that the gain should be recognized. The section has no application to a state of facts such as is here presented. The general rule of section 112 (a) applies. *Marjory Taylor Hardwick*, 33 B. T. A. 249.

The Commissioner next contends that even if there was a sale and a loss, section 118 applies and allows no deduction for the loss. Section 118 provides that no deduction shall be allowed for any loss claimed to have been sustained in the sale or other disposition of shares of stock where it appears that within 30 days before or after the date of such sale or other disposition the taxpayer has acquired or has entered into a contract or option to acquire "substantially identical property, and the property so acquired is held by the taxpayer for any period after such sale or other disposition." The Commissioner's theory is that the taxpayer acquired property substantially identical to his Midland shares when he acquired the Equities shares, i. e., he owned 11,550 shares of Midland prior to the transactions and thereafter he owned a $\frac{11,550}{36,800}$ joint interest in 36,800 Midland shares. He cites neither cases nor rulings nor regulations in support of this argument. The separateness of a corporation and its stockholders can not be disregarded for this purpose. *Eisner* v. *Macomber*, 252 U. S. 189, 213. Equities owned the Midland shares after November 19, 1929. The petitioner merely owned stock in Equities. The indirect interest which he thus had in the Midland shares belonging to Equities was not substantially identical to the Midland shares which he owned prior to the transaction. *Klein* v. *Board of Supervisors*, 282 U. S. 19, 24.

*Decision will be entered under Rule 50.*