COURIER JOURNAL JOB PRINTING CO. v. GLENN, Collector of Internal Revenue, for District of Ky.

No. 2304.

District Court, W. D. Kentucky.

Feb. 20, 1941.

56

Selligman, Goldsmith, Everhart & Greenebaum, of Louisville, Ky., for plaintiff.

Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe and John E. Garvey, Sp. Assts. to Atty. Gen., and Eli H. Brown, III, U. S. Atty., of Louisville, Ky., for defendant.

MILLER, District Judge.

This action was brought by the plaintiff, Courier Journal Job Printing Company, against the defendant, Seldon R. Glenn, Collector of Internal Revenue, to recover $10,974.17 with interest, being the amount paid by it under protest as additional income tax for the taxable year ending December 31, 1934. The payment was under a deficiency assessment made by the Commissioner of Internal Revenue, resulting from the rejection by the Commissioner of deductions claimed by the taxpayer on account of bad debts and losses. Application for refund was duly made and refused and this action thereafter timely filed.

The plaintiff is a Kentucky corporation engaged in the business of job printing and allied lines in Louisville, Kentucky. For a number of years prior to April 1, 1933, it owned 416 shares of the 800 outstanding shares of the capital stock of the Insurance Field Company, also a Kentucky corporation with its chief place of business in Louisville, Kentucky. The main business of the Insurance Field Company was the publication of the Insurance Field Maga-

zine, which had a wide circulation throughout the country. It also sold supplies to insurance agents and insurance companies, and published specialty books on various subjects pertaining to insurance, policy labels and various accounting forms. It had no facilities for the doing of printing, and such business of this kind as came to it from its customers it would turn over to the plaintiff. The volume of this kind of business exceeded $50,000 a year for a number of years. The Insurance Field Company also had an agreement with the plaintiff whereby the plaintiff sold goods to certain insurance companies in the name of the Insurance Field Company and in whose name the account was billed. Prior to 1932 a commission was paid by the plaintiff to the Insurance Field Company on this business, but after 1932 no commission was paid. The corporate charter of the Insurance Field Company expired April 1, 1933 although the officers of the corporation and of the plaintiff were not aware of that fact and did not have it brought to their attention until early in 1934. On March 29, 1934 articles of incorporation were executed for the incorporation of a new company under the name of Insurance Field Company, and a new charter was issued by the State of Kentucky on April 13, 1934. The officers and directors of the old corporation attempted to effect a re-organization through the medium of the new corporation by offering to the stockholders of the old company the same number of shares of stock in the new company as each had held in the old company, and that the old company should transfer all of its assets to the new company which would receive those assets and assume the old company's liabilities. The old company continued to function and do business as usual, and the new company remained inactive while these negotiations were taking place. The widow of Young E. Allison, a former editor of the Insurance Field Magazine, owned 72 shares of stock in the old company which had been bequeathed to her by her husband. She declined to participate in a re-organization and through her attorney demanded that the old company be liquidated. The attempted re-organization along these lines was abandoned and the plaintiff purchased Mrs. Allison's stock for $2,400 in August 1934, which eliminated further demands for a liquidation. During February and August of 1934, 302 shares of stock of the

37 F.SUPP.—4½

old corporation which had been purchased by employees on long time credit, were cancelled and the purchase-money notes surrendered, by agreement between the company and said employees. Accordingly, on September 1, 1934 the plaintiff owned 488 shares of a total of 498 shares outstanding of the old Insurance Field Company, for which it had paid $44,000.

The officers of the plaintiff, who was the chief creditor of the old corporation, did not wish that the business of the old company be liquidated and accordingly made new plans to carry on as in the past. In November 1934, the assets of the old company were appraised and an audit made of its affairs, which showed that as of November 1934, the old Insurance Field Company was indebted to the plaintiff in the following amounts: Note $15,000, Open Account $53,050.39, making a total indebtedness of $68,050.39. Of this indebtedness approximately $8,000 represented credit extended by the plaintiff to the old company between April 1, 1933 and January 1, 1934, and approximately $17,000 represented credit extended to the old company by the plaintiff during the year 1934. The old company also owed to creditors other than the plaintiff the sum of $3,119.83. The value of its assets was placed at $32,640.67, without any value being given to good will. Based on these figures a stockholders' meeting of the old company was held on December 10, 1934 at which a resolution was adopted showing the value of the company's assets to be $32,640.67, which were transferred to the plaintiff in consideration of the plaintiff assuming all of the old company's existing indebtedness to creditors other than the plaintiff and applying and crediting upon the old company's debt to the plaintiff the remaining value of said assets, to wit, $29,520.84. The directors and officers of the old company were authorized and directed to take the necessary steps to wind up the business of the old company and to transfer the assets to the plaintiff according to the resolution. Immediately following this meeting the directors of the old company met and adopted the same resolution. Immediately following this meeting the stockholders of the new Insurance Field Company held a meeting and adopted a resolution which provided that in consideration of the transfer by the Courier Journal Job Printing Company of the assets of the old Insurance Field Company which it had received the

new company would cause to be issued to the Courier Journal Job Printing Company 499 shares of its capital stock without par value fully paid and nonassessable at a valuation of $59.16 per share (which totaled $29,520.84) and would assume the obligations of the old company existing on November 30, 1934 excepting the old company's obligation to the Courier Journal Job Printing Company. The authorized capital stock of the new corporation was 800 shares of no par value. Immediately after this meeting there was held the first meeting of the Board of Directors of the new Insurance Field Company at which the resolution of the stockholders' meeting was adopted. With minor exceptions the same individuals, being stockholders and duly elected directors in both the old and new corporations, made up the membership of each of these four meetings. Immediately thereupon the old company discontinued business and the new company took up and continued the former business of the old company with the same customers and the same assets. The plaintiff made an entry on its journal on December 13, 1934 which read "To charge off the accounts, notes and stock of Insurance Field Company, which was liquidated on Dec. 1, 1934," and immediately under it a further entry of the same date reading—"Stock owned—Insurance Field Co. To reserve for contingencies $29,520.84. To record the transfer of the net assets acquired by Courier Journal Job Printing Co. in the liquidation of the Old Insurance Field Company to the new Insurance Field Company, as of Dec. 1, 1934." The Board of Directors of the Courier Journal Job Printing Company at a meeting held on January 22, 1935, approved the action of the officers taken in the two transactions with the old and new corporations. The books of the plaintiff do not show any other entry reflecting these transactions.

In its income tax return for the year 1934 the plaintiff claimed a deduction for the unpaid balance of its account against the old Insurance Field Company, after crediting it with the net value of $29,520.-84 of the assets received from the old company, as a bad debt ascertained to be worthless and charged off within the taxable year, and a further deduction of $44,000 for the loss sustained on its stock holdings in the old company. The Commissioner disallowed both deductions, ruling (a) that the taxpayer had not suffered any loss during the year 1934 by reason either of its account receivable against the Insurance Field Company or its ownership of stock in said Company, and (b) even if such a loss had been sustained it was not a deductible one because it was incurred in a transaction which was a re-organization of the Insurance Field Company and so not considered as a deduction under the Revenue Act of 1934.

It is well settled that deductions for income tax purposes on account of losses sustained by the taxpayer are not matters of right but depend upon congressional grace and are permissible only to the extent specifically authorized by the Statute. New Colonial Ice Co. v. Helvering, 292 U. S. 435, 54 S.Ct. 788, 78 L.Ed. 1348; Sabath v. Commissioner, 7 Cir., 100 F.2d 569; Lindley v. Commissioner, 2 Cir., 63 F.2d 807. The deduction in the present case is claimed by the taxpayer by reasons of the provisions of Section 23, Subsections f and k of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, pages 672, 673, which provides as follows:

"§ 23. In computing net income there shall be allowed as deductions:  *  *  *

"(f) *Losses by Corporations.* In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise.  *  *  *

"(k) *Bad Debts.* Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts);  *  *  *."

If we accept at its face value the transfer of its assets by the Insurance Field Company to the plaintiff for a consideration of $32,640.67, it follows that the unpaid balance of the account receivable, after giving credit for the net value of the assets so received, becomes a bad debt under Section 23(k) which is deductible for the taxable year 1934. It was immediately following that transaction that the unpaid balance was charged off as a bad debt. It may or may not have been a bad debt prior to that time and even prior to the year 1934, but the test provided by the statute is, not when did it become a bad debt, but when was it ascertained by the taxpayer to be worthless and charged off by him as a bad debt. Sabath v. Commissioner, supra; Moore v. Commissioner, 2 Cir., 101 F.2d 704; Commissioner v. MacDonald Engineering Co., 7 Cir., 102 F.2d 942. It

was realized during the year 1934 that the corporate charter of the Insurance Field Company had expired. Under the Kentucky law this required a winding up of the corporation's affairs—Kentucky Statutes, Sec. 561. This meant that the debt would either be paid in whole or in part by a liquidation of the company's assets, or that it would be settled in some other way. Prior to that time it was not a worthless debt, even though not collectible at its face value. The resulting liquidation established what portion of the debt was worthless.

■ Since the corporation was not able to pay its debts in full, it necessarily followed as a matter of law that its stock became worthless, and any stockholder at that time suffered a loss by reason of his stock ownership of the corporation equal to the amount paid for the stock. This was the identifiable event which has been held by Courts to be necessary in order to sustain a loss deductible under Section 23 (f) of the Revenue Act of 1934. See United States v. S. S. White Dental Manufacturing Co., 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120. Defendant contends, however, that the transaction should not be accepted at its face value. He points out that after the liquidation of the old company and the commencement of business by the new company the plaintiff was in just as good a position as it was before, in that it still owned the same number of shares in a new corporation having the same assets and carrying on the same business of the old corporation. However, this ignores the principle that although one's financial condition may be no different on one day than it is on the day immediately preceding, yet a loss previously suffered, but not taken, has during that interval been finally taken and as a matter of law becomes a deductible loss. The reinvestment of the proceeds in the securities of another corporation, even in the same business, may put one in practically the same financial condition as he was before the sale, but the loss has become an actual one instead of one merely on paper, and so has become a deductible loss for income tax purposes.

■ Defendant further contends that the plaintiff suffered no loss in its stock ownership in the old corporation because it is undisputed in the evidence that in August 1934 it bought 72 shares from Mrs. Allison for $2,400 which shows that the stock had a substantial value a short time before the transaction in question. That purchase on the part of the plaintiff was made under pressure in order to avoid a forced liquidation which might have been very detrimental to the plaintiff's interest in and against the old corporation, and is not a fair criterion of its reasonable market value. During the following three months liquidation was decided upon; it was the carrying out of that plan which destroyed any value which the stock may have had earlier in the year when prospects of some kind of a re-organization and continuation in business may have existed.

■■ Defendant's real complaint under his first contention is that the assets, including good will, of the old corporation were worth more than the purchase price of $32,640.67, and if they had been sold at their real value (as a going business) the plaintiff's debt would have been paid in full, with substantial value remaining for the stockholders. This would have merit if the assets, including good will, had been sold or transferred to a new corporation to carry on the business of the old corporation, in which event the purchase price would have included the good will and been substantially in excess of $32,640.67. The answer to that is the simple fact that it was not done that way, although it could have been done that way. The plaintiff purchased only the assets, excluding good will, of the old corporation. The amount paid was fair, and is not subject to criticism. There was nothing which required the plaintiff to purchase both assets and good will if it only wished to buy the assets, excluding good will. The old corporation was compelled by law to wind up its business and liquidate. Ky.Statutes, Sec. 561; Home Building Ass'n v. Bruner, 134 Ky. 361, 120 S.W. 306. The statute had been construed as allowing two years for this purpose. Ewald Iron Co. v. Com., 142 Ky. 465, 134 S.W. 481. The major portion of that two-year period had expired. The plaintiff found itself in a situation which it controlled and where it could make a good bargain; it bought the assets without the good will; it transferred the assets without the good will to a new corporation controlled by the plaintiff. No doubt it had the hope and expectation of obtaining for the new corporation the benefit of the existing good will of the old corporation, by engaging in the same busi-

ness with the same assets and same name, without being required to buy it. If this hope and expectation materializes, the plaintiff made a good bargain, and acted within its legal rights. But that doesn't alter the fact that the old corporation only realized, in liquidation forced by the statute, on the value of its assets other than good will. We cannot ignore the actualities by theorizing how it could have been done a different way, which way would justify the tax collected by the defendant. It just wasn't done that way, and as long as the way in which it was done was legal the Government has no cause to complain because the method used resulted in a loss on the books of the taxpayer. Whether or not that loss was a deductible one for income tax purposes is controlled by other sections of the Revenue Act dealing with transfers of assets from one corporation to another and with corporate re-organizations, which are designed to allow losses under certain circumstances and to disallow them under others.

▆▆▆▆ Plaintiff relies upon Section 112 (a) of the Revenue Act of 1934, 26 U.S.C. A. Int.Rev.Acts, page 692, to sustain its claim that the losses suffered are deductible. It reads as follows: "Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section."

If the plaintiff's loss is not to be recognized for income tax purposes, it must be by reason of some provision contained in subsections b, c, d or e of this section, 26 U.S.C.A. Int.Rev.Acts, pages 692–694, which deal with gains or losses not recognizable. Subsection b deals with exchanges solely in kind and treats of five different situations, as follows: b (I) deals with the exchange of property held for productive use for property of a like kind. b(2) deals with the exchange of stock in a corporation for other stock in the same corporation. b(3), b(4) and b(5) read as follows:

"(3) *Stock for stock on reorganization.* No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

"(4) *Same—Gain of Corporation.* No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

"(5) *Transfer to corporation controlled by transferor.* No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange."

If the separate legal entities of the old and new corporations are to be observed, none of the five subdivisions of Section 112 (b) are applicable to the present case. Plaintiff's stock in the old corporation was not exchanged for stock in the new corporation. The old stock is still owned, although it became worthless; the new stock was acquired by purchase. The old corporation did not exchange its property for stock in another corporation; it transferred it to the plaintiff in part payment of its debt. In the transaction giving rise to the loss now claimed, between the old corporation and the plaintiff, the plaintiff made no exchange of its property or of any stock owned by it. On the contrary it received property in part payment of a debt. This is not the kind of a transaction which preserves the continuity of interest between the transferor and the transferee so as to make it free of tax effect. Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428; Letulle v. Scofield, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355. It is true that the plaintiff thereafter exchanged property for stock in another corporation but that transaction is not the one which gave rise to the loss now claimed by the plaintiff. Subsections c and d of Section 112 deal solely with gains instead of losses and so are not applicable. Subsection e of Section 112 deals further with the situations enumerated in subsection b, which as pointed out above are not applicable to the present case. Accordingly, none of the exceptions referred to in Sec-

tion 112(a) prevent the loss from being recognized. Defendant's contention on this phase of the case is not entirely clear. His answer denies that the attempt made by creditors and stockholders of the old corporation to reorganize it through the instrumentality of the new corporation failed, and alleges in general terms that in truth and in fact a reorganization was effected. Reliance is put upon Section 112 (g), 26 U.S.C.A. Int.Rev.Acts, page 695. This section however, merely defines the terms "reorganization" and "a party to a reorganization." It does not say that a loss taken in a "reorganization" will not be recognized. There is no statutory provision to that general effect. Even though a reorganization is effected, it must be coupled with one of the situations set out in subsections of Section 112(b) in order to prevent the loss from being recognized. As pointed out above the present case does not fall within any of those descriptions. Accordingly, even though a reorganization may have been effected, the loss is still recognizable under Section 112(a). Defendant's contention that the transaction falls within the classification of Section 112(b) (3) cannot be sustained unless we completely ignore the two separate transfers of the assets of the old corporation, first, from the old corporation to the plaintiff, and, second, from the plaintiff to the new corporation, and treat it as a direct transfer from the old corporation to the new corporation. It also ignores the effect of the legal termination of the old corporation. Although the result reached in each case is the same, yet the Court is required to give full effect to each step actually taken by the parties without reference to the ultimate purpose of the transactions. The separate existence of distinct corporate entities will be recognized. Seymore H. Knox v. Com'r, 33 B.T.A. 972; Marjory T. Hardwick v. Com'r, 33 B.T.A. 249; J. Hampton Hoult, etc. v. Com'r, 24 B.T.A. 79; Kennemer et al v. Commissioner, 5 Cir., 96 F.2d 177; Athol Manufacturing Co. v. Commissioner, 1 Cir., 54 F.2d 230; Burnet v. Riggs National Bank, 4 Cir., 57 F.2d 980. Effect must also be given to the legal termination of the old corporation and its forced liquidation. Home Building Association v. Bruner, supra; Ewald Iron Works v. Commonwealth, supra; Waddell et al. v. Commissioner, 5 Cir., 102 F.2d 503; France Co. v. Commissioner, 6 Cir., 88 F.2d 917.

Judgment to be entered for the plaintiff. Counsel will prepare and submit for entry findings of facts and conclusions of law in accordance with the foregoing opinion.