## MORGAN MFG. CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4857.

Circuit Court of Appeals, Fourth Circuit.

Dec. 20, 1941.

Junius G. Adams, of Asheville, N. C. (Adams & Adams, of Asheville, N. C., on the brief), for petitioner.

Samuel H. Levy, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch and Gerald L. Wallace, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before SOPER and DOBIE, Circuit Judges, and William C. COLEMAN, District Judge.

SOPER, Circuit Judge.

Deficiencies for the year 1936 in income tax in the sum of $5,844.14 and in excess profits tax in the sum of $509.97 assessed against Morgan Manufacturing Company are the subject of this petition for review. The first question involved requires the determination of the basis for depreciation of certain assets of the taxpayer, and the answer depends upon whether the assets were acquired in connection with a statutory corporate reorganization or as the result of a sale. The Board of Tax Appeals held that under the circumstances now to be outlined a sale and not a reorganization had taken place.

Morgan Manufacturing Company and Dimension Manufacturing Company were North Carolina corporations. Morgan had 100 shares of stock outstanding of which D. B. Morgan and Kent Smith each held 45 shares and D. B. Morgan, Jr. 10 shares. Dimension had outstanding 1,611½ shares of common stock in the hands of six shareholders, of which 550 shares were held by D. B. Morgan; and in addition it had outstanding 250 shares of preferred stock. It owed $62,500 upon mortgage notes which were held in varying amounts by four persons (other than D. B. Morgan) who held in the aggregate a majority of the common stock.

Prior to December 1, 1934, Dimension leased to Morgan certain assets, with an option to purchase the same. On October 31, 1934 the Board of Directors of Dimension adopted a resolution to extend the lease and option for a year ending December 1, 1935. The renewal of the contract was not actually executed; nevertheless, Morgan with the consent of Dimension continued to possess and use the property until the formal acquisition thereof by a successor corporation on June 16, 1936 in the manner following:

In 1936 before the middle of June, the stockholders of the two corporations entered into an oral agreement that if Morgan as it was to be constituted after June 16, 1936, would pay the mortgage notes of Dimension in the sum of $62,500, the stockholders of Dimension would release their rights in the stock of Morgan as then constituted. In effect the agreement contemplated the acquisition by Morgan of the leased assets for the sum named. Accordingly, on June 15, 1936, the Board of Directors of each organization adopted a resolution providing for the consolidation of the two corporations under the name of Morgan Manufacturing Company, and on the same date these resolutions were approved by the stockholders of each corporation. In order to carry the resolutions into effect, an agreement of merger consolidating the two corporations was executed under date of June 15, 1936, and filed in the office of the Secretary of State of North Carolina on June 16, 1936. These proceedings conformed to the pertinent provisions of the statutes of North Carolina, Art. 13, Ch. 22, Sections 1224(a) and 1224(b) of the North Carolina Code for the merger or consolidation of North Carolina corporations; and the result was, by virtue of the statutes, that on June 16, 1936 the merged corporations ceased to exist and the consolidated corporation came into being possessed of all the rights and vested with all the property of the constituent bodies.

The agreement of merger provides that upon the filing thereof in the office of the Secretary of State, the outstanding shares of stock of each corporation should ipso facto and without any other action on the part of the respective holders thereof, be converted into shares of the new corpora-

tion, each share of preferred stock of Dimension to become 1 share, each share of common stock of Dimension to become ⅓ of a share, and each share of Morgan to become 1.71 share of the stock of the new corporation. The conversion was to be evidenced by a surrender and cancellation of the old certificates and the issuance of new certificates by the new Morgan; but this formality was not carried into effect. The new corporation, resulting from the consolidation or merger, was to have an authorized capital stock of 1,000 shares of no par value. The directors named were to be three in number, all of them from old Morgan.

On or about July 7, 1936, the new corporation paid off the $62,500 of mortgage notes of Dimension, and the rights of the stockholders of Dimension in the stock of the taxpayer were thereby released. The money used to pay the mortgage notes was borrowed from the Reconstruction Finance Corporation, as will appear hereafter in the recital of the facts giving rise to the second question for decision. Application for the loan was made by Morgan on December 28, 1935, and the loan was made on July 6, 1936. On or about the same date 900 shares of the taxpayer's stock were issued in addition to the 100 shares of old Morgan then outstanding, so that thereafter the taxpayer had 1,000 shares outstanding as follows: 450 shares each to D. B. Morgan and Kent Swift, 99 shares to D. B. Morgan, Jr., and 1 share to William McCants.

We are to consider whether these transactions effected a reorganization within the meaning of Section 112 of the Revenue Act of 1936, 49 Stat. 1648, 26 U.S.C.A. Int.Rev. Acts, page 858, or, as the Board of Tax Appeals held, a sale of the assets by one corporation to the other. The answer is determinative, for if a reorganization was effected, then the basis for depreciation of the assets was the original cost thereof to Dimension; but if a sale took place, the basis was the cost to new Morgan, the taxpayer. See Sections 113(a), 113(b) and 114(a) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, pages 859, 866.

Section 112 provides in part as follows:

"(g) Definition of reorganization. As used in this section and section 113—

"(1) The term 'reorganization' means (A) a statutory merger or consolidation, or (B) the acquisition by one corporation in exchange solely for all or a part of its voting stock: of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of another corporation; or of substantially all the properties of another corporation, or (C) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (D) a recapitalization, or (E) a mere change in identity, form, or place of organization, however effected."

It will be observed that the federal statute defines the term "reorganization" in the alternative in clauses (A) to (E) of subsection (g). The taxpayer cites decisions of this and other courts wherein it is indicated that each clause is sufficient in itself, so that compliance with it alone accomplishes a reorganization within the meaning of the section, although the conditions of the other lettered clauses are not met. See C. H. Mead Coal Co. v. Commissioner, 4 Cir., 72 F.2d 22; Britt v. Commissioner, 4 Cir., 114 F.2d 10, and cases cited. The contention of the taxpayer seems to be that it has complied with the conditions of each of the clauses (A), (B) and (C) of the statute. It is said (1) that "a statutory merger or consolidation" of the old Morgan and Dimension took place under the laws of North Carolina, and hence the conditions of clause (A) were answered; (2) that the new corporation acquired in exchange for its stock at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the constituent corporations, and therefore the conditions of clause (B) were fulfilled; and (3) that there was a transfer by old Morgan and by Dimension of all or part of their assets to the new Morgan by reason of the statutory merger, and immediately after the transfer the stockholders of the transferor corporations were in control of the new Morgan to which the assets were transferred, and therefore the conditions of Clause (C) were met.

All of these observations are literally true. A consolidation of corporations took place in conformity with the North Carolina statutes. The new corporation thereby created acquired all the stock of the merged corporations in the sense that their stock was converted into its stock. A transfer of all the assets of the constituent bodies to the consolidated corporation was accomplished by the merger under the terms of

the statutes, and after the merger, the stockholders of the constituent bodies were in control of the new corporation for the period of 22 days between June 16, 1936, when it came into being, and July 7, 1936, when the mortgage notes were paid, and the holdings of the Dimension stockholders in the new corporation, that is 787⅙ shares out of a total of·958⅙ shares outstanding, ceased to exist.

■ But it is not sufficient to read the statute literally. LeTulle v. Scofield, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355; Pinellas Ice, etc., Co. v. Commissioner, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428. Compliance with the federal statute was obviously superficial, and the transaction in· its essence was a sale. It is a fair inference that the stock of Dimension was valueless, for its stockholders entered into an agreement with the stockholders of old Morgan which enabled that corporation to acquire the Dimension assets upon the payment of its mortgage debt. The agreement from its inception contemplated the retirement of the Dimension interests from the business, and this intention was further evidenced by the provisions of the agreement of merger that the Board of Directors of the new corporation should consist of only three persons, all of them Morgan men. The conversion of the Dimension stock into the new Morgan stock pending the payment of the mortgage debt was obviously an expedient to secure the mortgagees until the loan was secured from the Reconstruction Finance Corporation. The short period of their control of the corporation had no other significance, and when the loan was consummated the money was at once used to pay the mortgage note, and the control of the Dimension stockholders was speedily relinquished in accordance with the original plan.

We think that the Board of Tax Appeals was justified in assuming that the preliminary oral agreement, the corporate merger and the payment of the mortgage debt were all parts of a single transaction which, despite its form, amounted to a sale by one corporation of all of its assets to another corporation for an agreed sum in cash. This object could have been attained much more simply and easily by a direct conveyance of the property from Dimension to old Morgan, free from the mortgage debt, for the sum of $62,500; and no explanation of the adoption of the more cumbersome method has been offered.

■ ■ The taxpayer refers to a number of cases in which it has been held that if the continuity of interest required as a condition of reorganization by clause (C) of the statute is found to exist, it is immaterial that the period of control is short. See C. T. Inv. Co. v. Commissioner, 8 Cir., 88 F.2d 582; American Compress & Warehouse Co. v. Bender, 5 Cir., 70 F.2d 655; Portland Oil Co. v. Commissioner, 1 Cir., 109 F. 2d 479; Samuel Insull, Jr., v. Commissioner, 32 B.T.A. 47; Knox v. Commissioner, 33·B.T.A. 972. But it is clear· that each case must turn upon the true significance of the facts involved so that substance rather than form will prevail; and that if in any case a sale was actually intended and carried into effect, the transaction must be so regarded in whatever form it has been cast, especially if evasion of tax liability is thereby frustrated. Starr v. Commissioner, 4 Cir., 82 F.2d 964; Helvering v. Elkhorn Coal Co., 4 Cir., 95 F.2d 732; Helvering v. Security Savings & Commercial Bank, 4 Cir., 72 F.2d 874; Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355.

The second question grows out of a written application by the taxpayer to the Reconstruction Finance Corporation on December 28, 1935 for a loan of $65,000. The purpose of the loan was to secure funds with which to pay the mortgage notes of Dimension. The application for the loan was approved and adopted by the Corporation on January 27, 1936 but was not consummated by payment of the loan to the taxpayer until July 6, 1936. It was stated in the application for the loan that the taxpayer would not declare or pay any dividend or make any distribution upon its capital stock so long as it was indebted to the Corporation, without the latter's written consent. It was provided that the application, together with all conditions and agreements required by the Corporation, should constitute the contract between the taxpayer and the Corporation; and that the contract should become binding upon the parties only when all or any part of the loan applied for should be paid to the applicant by check or otherwise, or unconditionally credited to or for the account of the applicant. The loan was approved by the Corporation upon the condition that the taxpayer deliver to the Charlotte Branch of the Federal Reserve Bank of Richmond its promissory note for the amount of the loan secured by a first mortgage on the tax-

payer's assets. The taxpayer executed and delivered its note to the corporation on June 30, 1936; and the mortgage securing the note was executed on the same day and recorded on July 1, 1936. The amount of the loan was paid to the taxpayer on July 6, 1936.

We must determine the bearing of Section 26(c) (1) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 836, upon this state of facts. Section 14 of the Act, 26 U.S.C.A. Int.Rev.Acts, page 823, imposed a general surtax on corporate profits earned but not distributed as dividends during the year. Section 26(c) (1) of the Act exempted from the surtax the undistributed profits which the corporation could not distribute as dividends "without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends".

■ The crucial question is whether the transactions between the taxpayer and the Reconstruction Finance Corporation above described amounted to a written contract, executed by the taxpayer prior to May 1, 1936. It was held in Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 49, 61 S.Ct. 109, 111, 85 L.Ed. 29, that as the statutory provision granted a special tax exemption, it must be strictly construed; (See, also, Antietam Hotel Corp. v. Commissioner, 4 Cir., 123 F.2d 274, decided Nov. 10, 1941) and that "the natural impression conveyed by the words 'written contract executed by the corporation' is that an explicit understanding has been reached, reduced to writing, signed and delivered". Bearing this admonition in mind, we are of opinion that the taxpayer's contract with the Reconstruction Finance Corporation had not been executed before the critical date. It is true that the application became a part of the contract, but it was expressly provided that the contract should become binding only when all or part of the loan had been paid, and as we have seen, the loan was· not paid until July 6, 1936. Moreover, the application did not contain all of the terms of the contract because it was accepted by the Corporation only upon the condition that the taxpayer deliver its note for the amount of the loan secured by a first mortgage upon its assets. Until all of these conditions were met and the loan was paid to the taxpayer, the contract did not become binding upon the parties. These conditions did not prevail

until July 6, 1936, and prior thereto either party could have withdrawn from the negotiations. The taxpayer was not restrained by a written contract executed prior to May 1, 1936, to distribute dividends.

The decision of the Board of Tax Appeals is affirmed.