This suit was instituted by the filing of a bill for an injunction by one Windhurst to prevent the consolidation or merger of two corporations, one the Central Leather Company, and the other The United States Leather Company. Upon the filing of that bill an order to show cause was allowed and an ad interim
restraint was included. Upon a motion to dissolve the restraint, the same was vacated and the order to show cause discharged. The facts are contained in the opinion rendered on that motion and set out in detail in 101 N.J. Eq. 543. Thereafter, the bill was amended so as to include a prayer that in the event the injunction was denied, then that the contract created by the purchase by the complainants of their preferred stock should be specifically enforced and that the defendant Central Leather Company should be decreed to pay to each complainant the par value of his respective shares of such stock together with arrears of dividends, amounting to $42 for each share. New parties complainants have been added and the original complainant has withdrawn.
The facts on the final hearing do not materially change the case, and an injunction should not be allowed, because of the laches upon which the preliminary motion turned.
The theory of the complainants is that the merger of the defendant corporations operated to dissolve the Central Leather Company, within the meaning of section 31 of the General Corporation act. With this reasoning I am unable to agree. When reading that act in its entirety, it is unescapable that the legislature intended to set up two methods for the dissolution of corporations, one voluntary, as described in section 31, and the other involuntary, as described in section 56 et seq. Where either of these methods is pursued, it forever puts an end to the exercise by a corporation of any *Page 623 
of its powers, privileges or franchises and effectually ends the existence of the entity which we call a corporation, unless, of course, relief is secured pursuant to the sixty-ninth section. This is entirely apart from the idea of a merger under the one hundred and fourth, and following sections, which provide for the procedure whereby the assets, privileges and franchises of two corporations engaged in a similar business may unite either with one another or both into an entirely new corporation to be organized for that purpose. This operation does not result in the dissolution of either of the old corporations, but permits the carrying on of the activities of each of them in a new form and in union with each other.
It may appear, when superficially examined, as if the results and consequences of a merger are similar in some respects to a dissolution. For example, the name of one or both of the merging companies may be lost. The relation between the various stockholders of one of the corporations may be materially changed (as is the case here). But on the other hand, the language of those sections which deal with mergers show that these changes are incident to the uniting of the two corporations. The members of the board are not continued as trustees, and the act does not provide that either of the corporations shall be dissolved; it is not provided that the board of either shall proceed to wind up its business and affairs. There is no provision for liquidation and distribution. On the contrary, the act says that the stock shall be delivered up for conversion into shares of the capital stock of the new creation. The very provision for appraisal proves that dissolution does not result. The plain meaning of the act is that the corporations are to be continued as a joint or consolidated whole. It was not beyond the power of the legislature to permit a merger, because the Corporation act was the same in this respect at the time of the incorporation of the Central Leather Company as it is at present, and, of course, it is elementary that every stockholder secured his shares with notice of those powers which the act confers upon the corporation by which such shares have been issued. *Page 624 
In an attempt to legislate in general terms, to meet a subject so broad as the rights of corporations and limitations upon those rights, it is beyond human effort to foresee every one of the many and complicated situations which will subsequently arise and require an interpretation and application of the statute. For that reason every case similar to the one to be decided must, to some extent, stand upon its own particular facts and cirumstances as they are affected by the principles and doctrines of equity. Therefore, I have no fear that recourse may be had to the merger statute for the purpose of inequitably depriving one of his contract rights. One of the points decided upon the preliminary motion in this case was that the scheme or plan for converting the shares of the capital stock of the old corporation into those of the new Central Leather Company, were fair and equitable. Had the decision been otherwise, the result of a timely application by the present complainants would have been exactly opposite. Any dealings with the rights of stockholders of any class will be enjoined upon the application of any properly interested party, if the same is ultra vires, fraudulent or otherwise inequitable.
If it should be argued that such legislation invites fraudulent dealings by a corporation with regard to its preferred shares of capital stock, the answer of this court is that any such attempt will be promptly frustrated, and in the case at bar there is not even a charge of fraud.
While I do not know of any case in this state where this question has been raised by a party, I am impressed with the reasoning of the opinion written for the court of errors and appeals by the chief-justice in Riker Sons Co. v. UnitedDrug Co., 79 N.J. Eq. 580. There, under the form of a proposed dissolution of the defendant and the transfer by it of all its assets to an allied corporation, it was intended in effect to merge the two companies. Disregarding the form and examining the substance of the proposed transaction, Chief-Justice Gummere said:
"Manifestly, the prime purpose of the scheme outlined in this communication is not the winding up of the New Jersey *Page 625 
corporation and the distribution of its assets, or the proceeds of the sale thereof, among its stockholders, but the absorption of that company by the Massachusetts corporation, the transfer not only of its assets but of its business, to that corporation and the future carrying on of that business by the Massachusetts corporation under the name of the defendant company. The scheme, in its essence, whatever it may be in form, is not a plan for the reorganization of the New Jersey company, nor even for the winding up of its business, and its dissolution within the meaning of the latter word as used by our Corporation act, but is a scheme for its merger into or consolidation with the Massachusetts corporation. State v. Atlantic City and ShoreRailroad Co., 77 N.J. Law (48 Vr.) 465, 483."
It would be impossible to attempt to examine the immense number of citations contained in the elaborate and carefully prepared briefs. So far as those opinions from other jurisdictions are concerned which seem to declare that a merger operates as a dissolution of any corporation merged into another, it is sufficient to say that the reasoning does not appeal to me for reasons already given.
In Lonsdale Securities Corporation v. InternationalMercantile Marine Co., 101 N.J. Eq. 554, there was a surplus of some $17,000,000 in which I felt the preferred stockholders had secured rights which could not be diminished or destroyed in the case of any one of them without his consent. No such situation appears in the case at bar. Upon the other hand the proofs disclose that there is a deficit of almost $20,000,000 which will continue to mount, year by year, unless some such corporate step should be allowed as the one these complainants wish to defeat.
When the elements of this case are considered, it seems to me the discretion of the court should not be exercised in favor of the complainants, as they rely upon their strict legal right and urge that fact as a reason that the doctrine of laches should not be applied, and the defendants ask for a harsh preference over their fellows. *Page 626 
In view of what has been said above, the failure to apply to the circuit court for an assessment of the full value of their shares is their own fault.
In the brief filed on behalf of the defendants there is extended to the complainants the benefits and privileges of the plan they have attemped to enjoin. It is to be extended provided the offer is accepted before this decision is rendered. If the defendants will extend that option for a reasonable time, the bill will be dismissed. If on the contrary the defendants refuse so to do, I will consider an offer to argue as to whether or not I should retain the bill for the purpose of having this court fix the compensation due to the complainants, if any.
While my mind is not clear upon the subject, and notwithstanding what has been said as to the complainants relitigating whatever remedy they may have at law, it would appear beneficial to all parties engaged to have this court terminate all questions between the parties rather than leave them to protracted litigation at law.
I will advise a decree denying an injunction, denying specific performance but retaining the bill for the purpose of determining the subject of compensation. *Page 627