BURNET, Commissioner of Internal Revenue, v. RIGGS NAT. BANK.

No. 3246.

Circuit Court of Appeals, Fourth Circuit.

April 12, 1932.

Charles E. Lowery, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., and C. M. Charest, General Counsel, Bureau of Internal Revenue, and Eugene Meachem, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for petitioner.

Paul F. Myers, of Washington, D. C. (Wm. M. Williams, E. B. Quiggle, and Williams, Myers & Quiggle, all of Washington, D. C., on the brief), for respondent.

Before NORTHCOTT and SOPER, Circuit Judges, and HAYES, District Judge.

NORTHCOTT, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals (17 B. T. A. 615), and involves income taxes for the period June 10 to December 31, 1922, in the amount of

$6,682.98. The petition is filed by the Commissioner of Internal Revenue, the Board having found in favor of the taxpayer.

The facts, as found by the Board, and as admitted by petitioner, are as follows:

"The petitioner is a corporation organized under the National Banking Act, with principal office at 1503 Pennsylvania Avenue, N. W., Washington, D. C.

"A bank known as the Central Savings Bank started to do business in Washington, D. C., about August 1, 1917. On July 1, 1920, it was succeeded by the Hamilton Savings Bank. Under neither of these names was this institution successful. During 1921 there were substantial withdrawals of deposits including the deposits of the directors and officers and their families. During the period July 22 to July 28, 1921, the accounts of this savings bank were examined by a Federal bank examiner, this examination disclosing substantial impairment of its capital. Under date of September 1, 1921, the savings bank was notified by the Comptroller of the Currency that its capital was impaired to the extent of $34,193. Under date of November 3, 1921, the Comptroller of the Currency again notified the board of directors of the savings bank that its capital was impaired to the extent of $47,589. The directors of the savings bank were instructed to take immediate steps to remedy the situation.

"On or about September, 1921, the Comptroller of the Currency urged and solicited the Riggs National Bank to take over the Hamilton Savings Bank as a matter of good public policy. He represented to the officers of the Riggs National Bank that the condition of the savings bank was bad; that a run on the bank was imminent, that the bank would have to be closed if a run occurred and that other banks of the city might become involved. Responding to the solicitation of the Comptroller of the Currency, the Riggs National Bank, in the latter part of 1921 and the first part of January, 1922, purchased, through persons identified with the bank, all of the outstanding capital stock of the Hamilton Savings Bank and paid therefor $305,560.

"After the purchase of the stock of the savings bank the Riggs Bank found the condition of the savings bank to be much worse than had been anticipated at the time of the purchase of the stock.

"Before the affairs of the savings bank were fully liquidated, the Comptroller of the Currency determined that the capital of the savings bank was impaired to the extent of $96,096.99.

"The Riggs Bank caused the savings bank to be nationalized on or about May 10, 1922. On or about June 10, 1922, the savings bank, as nationalized, was merged with the Riggs Bank under Act of Congress of November 7, 1918, and the petitioner surrendered the shares of capital stock of said savings bank and received in return therefor all of its assets. The value of the assets of the savings bank at the time of its liquidation on June 10, 1922, was $210,610.93. The difference between the cost of the stock of the savings bank ($305,560) and the value of the assets received upon its liquidation ($210,610.93) in the amount of $94,949.07, was written off the books of the Riggs Bank as a loss.

"The Hamilton Savings Bank had no good will.

"In determining the tax liability of the petitioner the Commissioner divided the year 1922 into two periods, viz: (1) the period from January 1, 1922, to June 10, 1922, during which time he determined the Riggs National Bank and the Hamilton Savings Bank to be affiliated corporations and determined their taxable income upon the basis of a consolidated return for such period; and (2) the period from June 10, 1922, to December 31, 1922, during which time there was no affiliation. During this latter period the taxable income and tax liability of the petitioner were determined by the Commissioner upon the basis of its income without respect to affiliation.

"During the period of affiliation the Hamilton Savings Bank had an operating deficit of $41,485.22. In determining the consolidated net income subject to tax during the period ended June 10, 1922, the Commissioner offset such loss against the operating income of the Riggs Bank. The Riggs Bank claimed as a deduction for the period from June 10, 1922, to December 31, 1922, the amount of $53,463.85 ($94,949.07 less $41,485.22). The Commissioner refused to allow such deduction and computed the deficiency accordingly."

The sole question presented is whether a corporation realizes a loss which may be deducted in its income and profits tax returns under the Revenue Act of 1921 when it receives the total assets of a subsidiary corporation with which it has been affiliated and surrenders the total capital stock of such subsidiary. The corporation owned all the stock of its subsidiary.

The statutes and regulations involved are sections 201, 202, 234, and 240 of the Revenue Act of 1921, c. 136, 42 Stat. 227, and articles 631, 636, and 1545 of Treasury Regulations 62, and read in part as follows:

"Sec. 201. * * * (b) For the purposes of this Act every distribution is made out of earnings or profits, and from the most recently accumulated earnings or profits, to the extent of such earnings or profits accumulated since February 28, 1913; but any earnings or profits accumulated or increase in value of property accrued prior to March 1, 1913, may be distributed exempt from the tax, after the earnings and profits accumulated since February 28, 1913, have been distributed. If any such tax-free distribution has been made the distributee shall not be allowed as a deduction from gross income any loss sustained from the sale or other disposition of his stock or shares unless, and then only to the extent that, the basis provided in section 202 exceeds the sum of (1) the amount realized from the sale or other disposition of such stock or shares, and (2) the aggregate amount of such distributions received by him thereon.

"(c) Any distribution (whether in cash or other property) made by a corporation to its shareholders or members otherwise than out of (1) earnings or profits accumulated since February 28, 1913, or (2) earnings or profits accumulated or increase in value of property accrued prior to March 1, 1913, shall be applied against and reduce the basis provided in section 202 for the purpose of ascertaining the gain derived or the loss sustained from the sale or other disposition of the stock or shares by the distributee. * * *

"Sec. 202. (a) That the basis for ascertaining the gain derived or loss sustained from a sale or other disposition of property, real, personal, or mixed, acquired after February 28, 1913, shall be the cost of such property. * * *

"Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions: * * *

"(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise. * * *

"Sec. 240. (a) That corporations which are affiliated within the meaning of this section may, for any taxable year beginning on or after January 1, 1922, make separate returns or, under regulations prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income for the purpose of this title, in which case the taxes thereunder shall be computed and determined upon the basis of such return. If return is made on either of such bases, all returns thereafter made shall be upon the same basis unless permission to change the basis is granted by the Commissioner.

"(b) In any case in which a tax is assessed upon the basis of a consolidated return, the total tax shall be computed in the first instance as a unit and shall then be assessed upon the respective affiliated corporations in such proportions as may be agreed upon among them, or, in the absence of any such agreement, then on the basis of the net income properly assignable to each. There shall be allowed in computing the income tax only one specific credit computed as provided in subdivision (b) of section 236."

Treasury Regulations 62:

"Art. 631. Affiliated corporations.—Consolidated returns are based upon the principle of levying the tax according to the true net income and invested capital of a single enterprise, even though the business is operated through more than one corporation. Where one corporation owns or controls the capital stock of another corporation or other corporations, or where the stock of two or more corporations is owned by the same interests, a situation results which is closely analogous to that of a business maintaining one or more branch establishments. In the latter case, because of the direct ownership of the property, the invested capital and net income of the branch form a part of the invested capital and net income of the entire organization."

"Art. 636. Consolidated net income of affiliated corporations.—Subject to the provisions covering the determination of taxable net income of separate corporations, and subject further to the elimination of inter-company transactions (whether or not resulting in any profit or loss to the separate corporations), the consolidated taxable net income shall be the combined net income of the several corporations consolidated. Only one specific credit of $2,000, as provided in section 236 (b) and article 591, shall be allowed the consolidated group, and this only in case the net income of the group does not exceed $25,000; but if such net income is more than $25,000, the tax imposed by section 230 shall not exceed the tax which would be payable if the $2,000 were allowed, plus the amount of the net income in excess of $25,000. In respect of the statement of gross income and deductions and the several schedules required under Form 1120, a corporation filing a con-

983

solidated return is required to prepare and file such statements and schedules in columnar form to the end that the details of the items of gross income and deductions for each corporation included in the consolidation may be readily audited."

"Art. 1545. Distributions in liquidation. Where a corporation distributes all of its property in complete liquidation or dissolution, the gain realized by the stockholder from the transaction, computed under section 202, is taxable as a dividend to the extent that it is paid out of earnings or profits of the corporation accumulated since February 28, 1913. If the amount received by the stockholder in liquidation is less than the cost or other basis of the stock, a deductible loss is sustained."

■ Here the Riggs Bank, at the solicitation of the Comptroller of the Currency, entered into a transaction seeking to accomplish a much to be desired end. The purpose was worthy and the action to be commended. In the transaction it is admitted that respondent lost the sum of $94,949.07. Of this amount $41,485.22 was offset against the operating income of respondent for the first part of the year 1922, leaving a loss balance of $53,463.-85. Certainly, at some time, the Riggs Bank is entitled to offset this balance against operating income. There was a settlement, a complete liquidation, on June 10, 1922, when respondent surrendered stock for which it had paid $305,560, and received in return the assets of the Savings Bank of the value in cash or the equivalent of $210,610.93. Had respondent made a profit on the transaction as shown at the time of liquidation it would unquestionably have had to pay a tax on that profit, and it must follow that it should be allowed to deduct the loss in making up its tax return. There can be no better time to calculate a profit or a loss than as of the date of liquidation.

■ The separate corporate entities of the Savings Bank and the Riggs National Bank are not to be entirely ignored in considering this question, even though the entire stock of the one was owned by the other and they were affiliated. Cleveland Trust Co., Trustee, v. Consolidated Gas Electric Light & Power Co. et al., 55 F.(2d) 211 (decided by this court on January 12, 1932), and authorities there cited; Swift & Co. v. United States (Ct. Cl.) 38 F.(2d) 365; Sweets Co. of America, Inc., v. Commissioner of Internal Revenue (C. C. A.) 40 F.(2d) 436.

Under Article 1545 of Treasury Regulation, above quoted, this amount of $53,463.85

was a "deductible loss sustained" as shown by and at the time of liquidation. This position is sustained by the reasoning of Judge Swan in the case of Remington Rand, Inc., v. Commissioner of Internal Revenue (C. C. A.) 33 F.(2d) 77, and the authorities there cited by him. See, also, Aluminum Goods Manufacturing Co. v. Commissioner, 56 F.(2d) 568, decided by the Circuit Court of Appeals for the Seventh Circuit on February 25, 1932.

It is contended on behalf of the petitioner that the Riggs Bank in no way changed its financial situation in surrendering the stock on June 10, 1922, and taking over the assets of the Savings Bank, assets that it already owned, in fact, through its ownership of the entire stock of the Savings Bank. That by this transaction it gained or lost nothing. From the standpoint of tax assessment we cannot agree with this conclusion. From the moment the Riggs Bank purchased all of the stock of the Savings Bank it might be said with equal reason that its financial position was not changed, yet, it certainly could not be allowed to claim a loss as of the time of the purchase. The loss may have occurred then, but no one knew it nor could have known it. Nor was the amount of the loss or even the fact that there was a loss at all definitely ascertainable until the final liquidation. The transaction might have resulted in a gain to the Riggs Bank, a gain upon which it would have been taxed. In view of all this it cannot be successfully contended that the respondent should not be allowed to include this loss in its returns at some time. What better time than the date of liquidation?

While Congress, in the passage of the tax laws, has always endeavored, as far as possible, to eliminate claims for fictitious losses, there is no reason that laws passed with this end in view should be given a distorted meaning that would hold a real loss, such as was here suffered, to be a fictitious one.

■ That part of respondent's loss not included in its return for the first part of the year 1922 was properly included in its return for the remainder of that year.

On the other hand, we are convinced that the Board of Tax Appeals was right in refusing to allow the claim of the Riggs Bank for the entire loss as at the time of the liquidation, because of the fact that a part of this loss had been deducted by the bank in its return for the first part of the year 1922. To allow the entire loss as of June 10, 1922, would have resulted in respondent receiving credit twice for a part of the loss. David M.

Goodrich v. Williams H. Edwards, 255 U. S. 527, 41 S. Ct. 390, 65 L. Ed. 758; United States v. Ludey, 274 U. S. 295, 47 S. Ct. 608, 71 L. Ed. 1054.

Double credits equally with double taxation are to be avoided where possible in construing laws passed by Congress.

The decision of the Board of Tax Appeals is accordingly affirmed in its entirety.

Affirmed.