## TRENTON OIL CO. v. UNITED STATES.
### No. 14800.

District Court, E. D. Michigan, S. D.

Dec. 13, 1939.

Beaumont, Smith & Harris, of Detroit, Mich., for plaintiff.

John W. Babcock, Asst. U. S. Dist. Atty., of Detroit, Mich., for defendant.

888

PICARD, District Judge.

This is a suit brought by plaintiff to obtain a refund of taxes paid in the sum of $96,952.46 with interest thereon from January 21, 1933, to date, which taxes were paid under a deficiency assessment made by the Commissioner of Internal Revenue covering the taxable year 1929. There is no material dispute as to the facts, practically all of which have been stipulated, which facts I hereby find to be as follows:

## Findings of Fact

I. Petitioners are the trustees of Trenton Oil Company, a Delaware corporation, and were duly appointed trustees by the Chancellor of the State of Delaware on the 28th day of April, 1937.

II. Trenton Oil Company was duly incorporated under the laws of the State of Delaware on May 13, 1918. It was voluntarily dissolved, in accordance with the laws of Delaware, on or about February 8, 1932.

III. On May 15, 1930, Trenton filed its 1929 income tax return, reporting a net income of $3,151,716.68 and disclosing an income tax liability of $346,688.83. Thereafter the Commissioner of Internal Revenue determined and assessed an income tax deficiency amounting to $100,282.06. The only adjustment pertinent to this proceeding was the increase in taxable income by the Commissioner in the sum of $754,179.62, constituting profit realized upon liquidation of the White Star Refining Company of West Virginia, a wholly owned subsidiary corporation with qualifying shares held by officers or employees of Trenton Oil.

IV. Both plaintiff and defendant concede that if the distribution is taxable, the values used by the Commissioner are correct and that the difference of $754,179.62 is the correct profit realized by parent.

V. The deficiency of $100,282.06, determined by the Commission, was duly assessed by him on January 7, 1933, together with interest thereon in the sum of $16,925.69, making an aggregate assessment of $117,207.75 which was paid by Trenton on January 23, 1923. This action follows Trenton's claim for refund made May 24, 1933, which was rejected for $113,113.86.

VI. The court further finds that on or prior to May 22, 1924, Trenton Oil owned and operated a refinery at Wood River, Illinois, and was engaged in marketing petroleum products in the States of Illinois and Michigan and the surrounding territory. On May 22, 1924, the subsidiary, the White Star Refining Company of West Virginia, was organized under the laws of the State of West Virginia, for the purpose of acquiring and operating a refinery, and on July 1, 1924, parent transferred to subsidiary property known as Wood River Refinery, in consideration of the issuance by subsidiary to parent of 9,950 shares of a total of 10,000 authorized shares of its capital stock. The remaining 50 shares of the subsidiary's capital were issued to five individuals, officers, directors or employees of petitioners for cash. Later the number of shares was reduced to 5, endorsed in blank by the individuals and delivered to Trenton.

The court further finds that although Trenton Oil Company controlled White Star to the same extent as any majority stockholder controls his company and directs its policies, still from its organization in 1924 to its dissolution in 1929 the subsidiary, White Star, filed separate income tax returns, maintained its corporate organization separate and distinct from parent, had a separate and distinct board of directors, had separate and distinct officers and separate and distinct employees. Its board of directors held regular meetings and governed the affairs of the corporation in the same manner as all independent corporations govern their affairs. It had regular meetings of its stockholders and kept regular minutes of meetings which were maintained with meticulous care. It maintained its own books of account and financial records separate and distinct from the books of account and records of the parent and, in general, the subsidiary carefully maintained its separate and distinct corporate existence both as regards to existence as a creature of the State of West Virginia and as regards its existence as a federal taxpayer corporation. Subsidiary sold most of its products to parent corporation, but it contracted and dealt with parent as a separate legal entity and as separate and distinct from the parent company. It entered into formal contracts with parent company, and it sold its products to parent at the current market price for such. Subsidiary and parent had the same office address and the parent performed certain services for subsidiary, such as purchasing supplies, etc. for it, maintaining its books of account and records, obtaining insurance, and directing its traffic, etc. charging subsidiary an annual fee for such services.

VII. The court further finds that during all of the corporate existence of subsidiary, from 1924 to 1929 inclusive, Trenton and subsidiary never filed consolidated returns, but, on the contrary, always filed separate Federal income tax returns and parent computed its taxable net income for each year by deducting, as part of the cost of goods sold, the amounts actually paid or credited to subsidiary for the goods purchased or obtained from subsidiary and, similarly, the subsidiary filed its income tax returns and reported its income in accordance with the amount actually paid by or credited to it by the parent. In every respect the companies were to all appearances separate entities and income taxes for the respective years 1924 to 1929 inc. as disclosed by the returns filed, were duly assessed and paid by each of the respective taxpayer corporations.

VIII. The court further finds that the transactions whereby White Star transferred to Trenton Oil in 1929 all of its assets, subject to the liabilities which were assumed by said Trenton Oil Company upon surrender for cancellation of said White Star's capital stock, constituted a liquidation and the transfer of said assets constituted a distribution in liquidation.

### Law

It is petitioners' contention, first, that the separate corporate entities of Trenton and its subsidiary should be disregarded and the two corporations treated as one unit, and hence no taxable gain or income accrued to it from the acquisition of the subsidiary's assets upon its liquidation in 1929; second, that the acquisition of the assets of subsidiary by parent and the surrender of the subsidiary's stock constituted a reorganization as defined by Section 112 (i) of the Revenue Act of 1928 and is exempt from tax under Section 112(b) (4), 26 U.S.C.A. Int.Rev.Acts, pages 379, 377.

Neither of these contentions is in my opinion tenable. While it is true that under certain circumstances the Courts have and will disregard the corporate entity of affiliated and closely held corporations, in determining proper income no case has been cited by petitioners in which any court has ever disregarded the corporate entity upon distribution and liquidation of a subsidiary, as in the case at bar, where the tax is plainly and specifically fixed by the Revenue Act.

Section 115 of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 384, provides as follows:

"§ 115. Distributions by Corporations * * *

"(c) Distributions in Liquidation. Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. In the case of amounts distributed in partial liquidation (other than a distribution within the provisions of Section 112(h) of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits within the meaning of subsection (b) of this section for the purpose of determining the taxability of subsequent distributions by the corporation."

Section 111 of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 376, provides as follows:

"§ 111. Determination of Amount of Gain or Loss

"(a) Computation of Gain or Loss. Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in section 113, and the loss shall be the excess of such basis over the amount realized."

This provision of the Revenue Act is clear, unambiguous and specifically provides that profits derived from distribution in complete liquidation of a corporation are income and subject to the tax.

The facts are clear that petitioner invested in 1924 $583,760.70 and in 1929, upon the distribution in liquidation of subsidiary, parent received back assets of the value of $1,337,940.32, and hence parent derived a profit upon its investment of $754,-179.62. To uphold petitioners' contention that because they owned 9,995 shares out of a total of 10,000 shares of subsidiary's outstanding stock, the separate corporate entity of subsidiary should be disregarded, would be tantamount to entirely disregard-

ing the above provision of the Revenue Act of 1928. No authority for such a position has been cited by petitioners and this court is not constrained to ignore this clear, concise provision of the law.

Petitioners have urged that had Trenton filed consolidated returns, they would not have been subject to the tax under the provisions of the Revenue Act of 1928. This may be true, but Trenton and its subsidiary never filed consolidated returns. On the contrary it elected and did during all of the years of subsidiary's existence, file separate returns, each reporting its own income and each reporting its dealings with the other corporation as if they were any third party. Had petitioners and subsidiary filed consolidated returns all intercompany transactions would have been disregarded entirely. This court does not know and is not interested in why petitioners and subsidiary elected to file separate returns, but for reasons best known to themselves they did so elect and they cannot now come into court and, after obtaining the benefits of filing separate returns, also claim the benefits of filing consolidated returns.

The filing of consolidated returns was a privilege granted by Congress under Section 141 of Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 396, which also carried with it certain obligations. In order to obtain the privilege of filing consolidated returns the taxpayer had to agree to abide by and consent to all the regulations promulgated by the Commissioner in regard thereto. See also Art. 10 "Exercise of Privilege" as found in Treasury Regulations.

I am therefore of the opinion that it is of no consequence that petitioners might not have been subject to the tax herein involved had they elected to exercise their privilege of filing consolidated returns. On the contrary, they must abide by their election to file separate returns and the profit upon distribution is subject to income tax by the specific provisions of Section 115 of the Revenue Act of 1928.

Petitioners' contention that the acquisition of subsidiary's assets and the surrender of subsidiary's stock constituted a tax free reorganization, as defined by Section 112(i) and exempt from tax under Section 112(b) (4), is likewise untenable. In the first place, there was no plan of reorganization of the two corporations, but merely an exchange of the assets by subsidiary, to parent, in exchange for its capital stock, which resulted in the separation of the two corporations entirely and of the breaking of the affinity theretofore existing. It amounted to a liquidation.

Clearly these provisions are inapplicable because, first, there is no evidence of reorganization and, second, Section 112(b) (4) relates to an exchange of property solely for stock or security in *another* corporation a party to the reorganization. The property of the subsidiary here was surrendered to the parent, but not for stock or securities of another corporation.

The identical questions here presented were similarly raised before the United States Board of Tax Appeals in the case of France Co. v. Commissioner of Internal Revenue, 29 B.T.A. 661, involving the same statutes and the same taxable year. The Board of Tax Appeals in a concise opinion summarily disposed of the contentions raised by plaintiff and held the profit of the parent corporation was taxable. The case was then appealed to the Circuit Court of Appeals for this circuit and in a learned opinion by Justice Hicks, the court affirmed the board's decision. 6 Cir., 88 F.2d 917. Certiorari was denied by the Supreme Court, 302 U.S. 699, 58 S.Ct. 18, 82 L.Ed. 540. The facts in this case were almost identical with the facts in the case at bar, and I feel this opinion is binding upon this court.

Other cases quite analogous to the case at bar and supporting the conclusion that the distribution here was taxable are: Cerro De Pasco Copper Corporation v. United States, Ct.Cl., 13 F.Supp. 633, certiorari denied 298 U.S. 686, 56 S.Ct. 952, 80 L.Ed. 1405; Burnet v. Riggs National Bank, 4 Cir., 57 F.2d 980; Remington Rand, Inc., v. Commissioner, 2 Cir., 33 F.2d 77, certiorari denied 280 U.S. 591, 50 S.Ct. 39, 74 L.Ed. 639.

I have examined authorities cited by petitioners very carefully and do not find that any of them is in any way analogous to the case at bar or supporting petitioners' contention. It seems to me clear that the profit derived by petitioners upon distribution is taxable income under Section 115 of the Revenue Act of 1928.

An order for judgment in defendant's favor may be prepared in accordance with this opinion.