**GUTBRO HOLDING CO. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 174.

Circuit Court of Appeals, Second Circuit.

Aug. 27, 1943.

'L. HAND, Circuit Judge, dissenting.

———◆———

Root, Clark, Buckner & Ballantine, of New York City (George E. Cleary, of New York City, and S. Milton Simpson, of Washington, D. C., of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and Ray A. Brown, Spec. Assts. to Atty. Gen., for respondent.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The only question presented by this appeal is whether or not the petitioner realized a taxable gain to be recognized as such under the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 664 et seq., because of the way by which a statutory merger and consolidation of a wholly-owned subsidiary and its parent was brought about.

The petitioner, hereinafter called Consolidated to avoid confusion with a corporation whose name it took, is a personal holding company incorporated under the laws of the State of New Jersey which was formed in accordance with the laws of that state by means of an "Agreement of Merger and Consolidation Pursuant to § 105 of the General Corporation Act [N.J.S.A. 14:12–2, 14:12–3]. This agreement was entered into on September 29, 1936. Before referring to it in greater detail, however, it will be helpful to notice some of the business activities of Simon and Saul Gutner, the two brothers who became the owners in equal shares of all of the stock of this holding company when it was formed.

For some time prior to 1929 the brothers Gutner had been engaged in the rayon jobbing business as partners and in that year they formed a New York corporation called S. Gutner & Bros., Inc., which acquired the assets of that partnership. The name of this corporation was later changed to the Barberry Corporation. In addition to the assets of a going rayon business Barberry had, by 1931, accumulated considerable assets in the form of investments. The brothers likewise owned all of the stock of another corporation, the Gutbro Realty Corporation, which had been organized under the New York Law in 1921 and whose assets were confined exclusively to investments.

In 1931 the brothers decided to reorganize their holdings with the end in view of separating the operating assets of the rayon business from the assets of an investment character. The Hutner Holding Company, a New Jersey Corporation, was therefore organized with two thousand shares of authorized stock which were issued equally to the two brothers for their stock in Barberry and Gutbro. One day later, on October 23, 1931, an agreement was made whereby another New Jersey corporation, the Gutbro Holding Company, hereinafter referred to as Holding, was formed with an author-

ized capital stock of 30,000 shares of no par value. A New York corporation, S. Gutner & Bros., Inc., was also formed to take over and operate the rayon jobbing business and this corporation was authorized to issue 5,000 shares of $100 par value stock. Then in consideration of receiving all the investment assets of Barberry, Holding issued to Hutner, which owned all the stock in Barberry, 8,000 shares of its stock; to Hutner also was transferred all the stock of S. Gutner & Bros., Inc., the latter getting in return for it the operating assets and cash of Barberry. The new operating company also assumed all the liabilities of Barberry when it in this way acquired its cash and business assets. Hutner then transferred all its stock in the Gutbro Realty Corporation, the old investment company, to Holding for 5,000 shares of Holding's stock. At this time Hutner held 13,000 shares of Holding, which was all of that stock outstanding. Barberry and the old investment company were then dissolved.

When these changes had taken place the situation was as follows: The Gutners owned all the stock of Hutner. Hutner owned all the stock of Holding. Holding owned all the investment assets. Hutner also owned all the stock of S. Gutner Bros., Inc., and the latter owned all the operating assets of the rayon jobbing business. These steps were all treated by the parties to them as non-taxable and the Commissioner acquiesced.

With this background in mind the agreement of merger and consolidation of September 29, 1936, may better be understood and so may its purpose which was "greater efficiency and economy of management" by the consolidation of Holding, the subsidiary with all the investment assets, with the parent organization, Hutner. The way in which the consolidated corporation was brought about can best be seen by the agreement itself which provided in part as follows:

"Article I: The name of the consolidated corporation is and shall be and remain Gutbro Holding Company, the same being hereafter called the 'Consolidated Corporation'.

\* \* \* \* \*

"Article III: The capital stock of said corporation is and shall be 2,000 shares without nominal or par value, all of which are and shall be common stock. The rights, terms and conditions of the said shares of the said stock to be issued shall be the same as those of the shares of the common stock of the present Hutner Holding Company, as set forth in the certificate of incorporation filed in the office of the Secretary of the State of New Jersey on or about the 23rd day of October, 1931.

"Article IV: The manner of converting the capital stock of the corporations, parties hereto, into the capital stock of the consolidated corporation, shall be as follows:

"All the present holders of the stock of Hutner Holding Company shall continue to hold the same certificates of stock which they now hold, and such certificates shall represent a like number of shares of the common stock of the consolidated corporation.

"Each and every of the outstanding shares of stock of the Gutbro Holding Company shall be forthwith surrendered by the stockholders and retired and cancelled, Hutner Holding Company being the only stockholder of the Gutbro Holding Company.

"Article V: Except insofar as hereinafter otherwise specifically set forth, or as provided by statute, the corporate names, franchises, rights and organization of said Hutner Holding Company shall remain intact and said consolidated corporation shall possess the powers, privileges and rights granted by and shall be governed by and be subject to the certificate of incorporation of Hutner Holding Company.

"The corporate name and organization of Gutbro Holding Company, except insofar as the same shall continue by statute or may be required for carrying on the purposes of this agreement, shall cease upon the filing in the office of the Secretary of the State of New Jersey of this agreement, when adopted by the stockholders as hereinafter provided.

\* \* \* \* \*

"Article VII: Upon the consummation of the act of merger and consolidation herein provided for, all and singular the rights, privileges, powers and franchises of each of said corporations and all property, real, personal and mixed and all debts due on whatever accounts, as well as for stock subscriptions as all other things in action or belonging to each of said corporations, shall be vested in the consolidated corporation; and all property, rights, privileges, powers and franchises, and all and every other interest of the two corporations, parties hereto, shall hereafter be as effectually the property of the said consolidated corpo-

ration as they were of the several and respective corporations, parties hereto, and the title to any and all real estate, whether by deed or otherwise vested in any of the said corporations, shall not revert or be in any way impaired by reason of the said merger and consolidation, provided that all rights of creditors and all liens upon the property of any and all of said corporations, parties hereto, shall be preserved unimpaired, and the respective corporations, parties hereto, may be deemed to continue in existence in order to preserve the same; and all debts, liabilities and duties of either of said corporations, parties hereto, shall forthwith attach to said consolidated corporation and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it, it being expressly provided that the merger and consolidation of the corporations, parties hereto, shall not in any manner impair the rights of any creditor or creditors of any of said corporations. * * *"

There was also a provision in the agreement to the effect that it would become effective when approved by two-thirds of the stockholders of each of the corporations and this approval was obtained. The old Gutbro Holding Company filed its "Final Return" on September 30, 1936. Because of these transfers the Commissioner determined that the new consolidated corporation had received a taxable gain; and the Tax Court upheld his action on the ground that there had been a liquidation of Holding, the subsidiary, within the meaning of § 115(c) of the Revenue Act of 1934, 26 U. S.C.A. Int.Rev.Acts, page 703, and that though there had been a merger or consolidation in reorganization that was not controlling since what was done did not fall within any of the non-recognition sections of the Act.

We cannot agree that there was a liquidation of Holding in the sense that to all intents and purposes its business activities were ended so that the consolidation, which was admittedly carried out according to the terms of the agreement, brought the transaction within § 115(c) of the 1934 Act. Rather it appears that Holding's investment business was to continue, under a different corporate form to be sure but otherwise the same as before. Certainly such a transaction as this does not ordinarily result in liquidation as Windhurst v. Central Leather Co., 105 N.J.Eq. 621, 149 A. 36, affirmed 107 N.J.Eq. 528, 153 A. 402,

shows. That case is not controlling (Lyeth v. Hoey, 305 U. S. 188, 59 S.Ct. 155, 83 L. Ed. 119, 119 A.L.R. 410; Burnet v. Harmel, 287 U. S. 103, 53 S.Ct. 74, 77 L.Ed. 199) but it is at least persuasive in showing that a statutory merger and consolidation does not necessarily include the winding-up of the affairs of the merging corporation, nor the paying of its debts, nor the distribution of any remaining balance to its shareholders. Here the somewhat complicated and confusing facts are that Consolidated was given the name of Holding and the stock of Hutner was made its own. To it, however, and not to Hutner, Holding's sole stockholder, was transferred by operation of law the assets of Holding. The usual steps taken under New Jersey law to carry out a liquidation were not here taken and the net result was a continuation and not a winding-up of Holding's business activities. Strictly there was no distribution to "be treated as in full payment in exchange for the stock" but a transfer of assets by operation of law which, indeed, left the stock of Holding as worthless as it would have been after a liquidation, but there the similarity to a real liquidation ends.

It may be possible, as the Commissioner contends, for a liquidation to occur in the form of a consolidation; and such a situation did exist in Burnet v. Riggs Nat. Bank, 4 Cir., 57 F.2d 980, where a loss was allowed when a parent bank took over the assets of its subsidiary. But in that case the stock of the subsidiary savings bank was purchased and the assets later transferred to the parent with the purpose of liquidating an organization which, if it continued to try to operate as a going bank, was in danger of failing and involving other banks in that locality. That case is, accordingly, distinguishable on the facts.

When we look to what was actually done and give that effect, as courts should be careful to do in a tax case, we see, as did the Tax Court, that Consolidated acquired these assets in a reorganization as defined by § 112(g) (1) of the Act, 26 U. S.C.A. Int.Rev.Acts, page 695. But because of the way chosen to carry out the reorganization the tax court held that the transaction did not fall within any of the clauses in that section providing for the non-recognition of any resulting gain. And we agree, of course, that is not enough to make such gain tax free to show merely that it was the result of a merger or consolidation which is under the statute to be treated as a re-

organization as defined in § 112(g) (1) (A). There must be a reorganization with characteristics which also bring it within § 112(b) (3) before any gain is freed from recognition. United States v. Hendler, 303 U.S. 564, 58 S.Ct. 655, 82 L. Ed. 1018.

■ As the two Gutners were the real parties in interest who owned in equal shares this corporate set-up with the property so held they could, and apparently did, control every corporate act of each corporation. So it is not surprising to find that Consolidated really got in the consolidation the assets and corporate privileges of Holding in the way it did and assumed all of Holding's debts and liabilities; got all of Hutner's corporate privileges and assets, including all of Holding's capital stock, and assumed its debts and liabilities. But what is at first rather surprising is the fact that no new shares of stock were in the form of new shares issued by Consolidated in exchange for what it got. The assets of Hutner and of Holding greatly exceeded the liabilities of each and to that extent it would seem at first blush that Consolidated got such value for nothing. Yet that merely appears so on the surface. What in fact was done was to take advantage of the New Jersey statute to create Consolidated's stock by having Hutner's capital stock become its capital stock by the terms of the consolidation agreement instead of creating its stock by issuing it in the more usual way by executing new certificates. Hutner's stock having become its stock, however, and it having become charged with the same stock liability that it would have had if new certificates to the same effect had been issued, the fact that the method of accomplishment may have been unusual is presently of no moment. Here as we have seen Consolidated was saddled with the same stock liability it would have borne had it issued new stock and physically exchanged it solely for the stock or securities or property it received in the consolidation. As this stock so made its capital stock was already in the possession of the two Gutners who were to get it under the terms of the consolidation agreement it would have been but an idle act to deliver it to Consolidated to be handed back at once to them. That being so the stock was "exchanged" within the meaning of the term in § 112 (b) (3) as though the useless handling of the pieces of paper had taken place. And so we think the Tax Court also fell into error in deciding that

none of the non-recognition provisions of § 112 were applicable to this reorganization.

Sec. 112(b) (3) of the 1934 Act provided that: "No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization." For the reasons stated this subdivision made tax free the gain which has been taxed even though the actual creation of new stock certificates and their actual physical exchange solely for securities or property of corporations, parties to the reorganization, were made unnecessary, because the consolidation was of a parent corporation, wholly owned by the two Gutners, and its wholly owned subsidiary and consequently were not taken as what became the stock of Consolidated was already in the possession to those entitled to it.

■ The Commissioner has taken the alternative position that, though the Tax Court may have been in error in respect to a liquidation, there was a taxable gain upon reorganization which is to be recognized, despite the provisions of § 112. Its argument in brief is that these gains were absolutely taxable under § 22 of the 1934 Act, 26 U.S.C.A. Int.Rev.Acts, page 669. It runs somewhat as follows: Gross income is made the broad base for the computation of income taxes by § 22 of the 1934 Act, and there was included in it, inter alia, gains, profits, and income derived from "dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property." Such gains would of course be included in gross income for the taxable period in which they are "realized." And as no part of whatever gain resulted here from the "dealings in property" is within any part of § 112 providing for non-recognition of gain or loss there is nothing which relieves it from the burden of taxation imposed by § 22. The fallacy of this argument lies in the fact that Consolidated had no dealings in property of any kind, so far as this record shows from which it could derive gains or profits. It was merely the recipient of the property in exchange for its own stock. In receiving such property it was not engaged in any "dealings" in it though it might, of course, afterwards have dealings in respect to it which would produce gains, profits or in-

come. Merely taking it was not a "final disposition" of it which would result in "realized" gain. Nor does § 111(a) or (b) of the 1934 Act, 26 U.S.C.A. Int.Rev.Acts, pages 691, 692, apply here. Subdivision (a) provides for the computation of gain or loss from the sale or "other disposition of property" and does so in part by reference to § 113(b), 26 U.S.C.A. Int.Rev Acts, page 700, and to the "amount realized." Subdivision (b) defines the "amount realized." It is true that if the principle of ejusdem generis were applicable very likely the use of the word sale in connection with "other disposition of property" would alone exclude this transaction from the scope of § 111 since a sale presupposes that the one to be taxed for the gain has realized it in what was received for some interest in property before owned and relinquished. But we need not now so construe the phrase "other disposition of property." Sec. 111 lays no tax. It makes no gain taxable which otherwise would not be. It does provide a way to compute the gain or loss not only from the sale but from "other disposition of property." That read as it must be in pari materia with § 22(a) in the same statute may, perhaps, show how any gain taxable under it shall be computed whether such dealings are akin to a sale or not. However that may be, there must always first be a transaction in respect to property which so ends or changes the taxpayer's interest in it that a resulting gain is "realized." Until then there is nothing to complete in accordance with § 111.

Since the petitioner has prevailed to this extent it must necessarily follow that the assessment of excess profits taxes and of personal holding company surtaxes was erroneous also for the entire deficiency falls when the non-recognition provisions of § 112 are applied to this reorganization.

Reversed.

L. HAND, Circuit Judge (dissenting).

I do not agree with the view apparently taken by the Tax Court that "Consolidated" was a mere continuance of "Hutner," although the parties also seem to have so understood the transaction, for "Hutner" entered the "Holding" assets upon its own books as though they had been transferred to it. If, however, it were permissible to treat it in that way, I should have no difficulty in holding "Consolidated" for the tax. In that event, "Hutner," being the sole shareholder of "Holding" would have taken over all of "Holding's" assets, and so have changed its relation to them from shareholder to owner. That I think would have been a "realization" by "Hutner" of gain upon the "Holding" shares, and we should have held that the shares had been "disposed of" within the meaning of § 111(a). None of the sections relied upon would make such a gain "non-recognizable." As I understand the law, in transactions between a sole shareholder and his corporation the Treasury has the choice of treating them as real, or as fictitious. Burnet v. Commonwealth Improvement Co., 287 U. S. 415, 53 S.Ct. 198, 77 L.Ed. 399; Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406. Hence "Hutner" would have been liable to a tax and, if so, "Consolidated" would have been liable under Article VII of the merger agreement (and § 107 of the Complied Statutes of New Jersey [N.J.S.A 14:12-5]) which reads as follows: "all debts * * * of either of said corporations * * * shall forthwith attach to said consolidated corporation and may be enforced against it to the same extent as if said debts * * * had been incurred * * * by it."

However, "Consolidated" was in fact a new jural person, and the property of "Hutner"—the "Holding" shares—and of "Holding"—the "Holding" assets—passed directly to it at the instant of merger; there was no moment when "Hutner" held "Holding" assets, despite the entries on its books. For this conclusion I rely again upon Article VII of the agreement (and upon § 107 of the Compiled Statutes of New Jersey) which clearly contemplate that there shall be a new corporation and that the merging corporations—described as "former corporations"—shall "be deemed to continue in existence" only for the benefit of their creditors. Nevertheless, although for this reason "Consolidated" did not become a shareholder of "Holding" until the very instant that it became also the direct owner of "Holding's" assets, I think that it "disposed of" the "Holding" shares within § 111 (a). Through its promoters already before the merger it had agreed to become the sole shareholder of "Holding"; that made it equitably the owner of the shares. True, it had equally agreed to become the owner of the "Holding" assets; but it had agreed to become the "Holding" shareholder only in order that it should through the merger be able to unite shares and assets, a union which if carried out by "Hutner's" acquisi-

tion of the assets would have been a "disposition of" the shares, if I am right. I cannot consent that the parties be allowed to escape an actual liability by adopting a method in every practical sense the equivalent, merely because there was no instant of time in which "Consolidated" was not shareholder alone: i.e. not at once shareholder and owner of the assets. We must regard the transaction as a whole; if we do, the "Holding" shares were to be "disposed of" by uniting shareholder and owner. Therefore I would affirm the Tax Court as to the income tax and excess-profits tax.

As to the second point, I agree with Helvering v. Rebsamen Motors, Inc., 8 Cir., 128 F.2d 584 that § 351, 26 U.S.C.A. Int. Rev.Acts, page 757, does not cover the situation; there was no "sale." I would therefore reverse as to the personal holding company surtax.