## ROGAN v. STARR PIANO CO., PACIFIC DIVISION.

### No. 10379.

Circuit Court of Appeals, Ninth Circuit.

Dec. 27, 1943.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, A. F. Prescott, Homer R. Miller, and Fred Youngman, Sp. Assts. to the Atty. Gen., and Charles H. Carr, U. S. Atty., and E. H. Mitchell and Edward J. O'Connor, Asst. U. S. Attys., all of Los Angeles, Cal., for appellant.

Claude I. Parker and John B. Milliken, both of Los Angeles, Cal., for appellee.

Before WILBUR, MATHEWS, and STEPHENS, Circuit Judges.

MATHEWS, Circuit Judge.

Two California corporations—appellee and Gennett Realty Company, hereafter called Gennett—were merged in 1934 under and pursuant to § 361 of the California Civil Code.[1] Thereupon Gennett's separate existence ceased, and appellee, the surviv-

---

[1] Section 361 provides:

"Any two or more corporations may be (a) merged into one of such constituent corporations, which is herein designated as 'the surviving corporation,' or (b) consolidated into a new corporation, which is herein designated as 'the consolidated corporation,' as follows:

"(1) The board of directors of each corporation by resolution shall approve an agreement which shall set forth the terms and conditions of merger or consolidation, and the mode of carrying the same into effect, as well as the manner and basis of converting the shares of the constituent corporations into the

ing corporation, succeeded to all of Gennett's rights and property and became subject to all of Gennett's debts and liabilities.[2] In appellee's income and excess-profits tax return for 1934, no gain or loss was shown to have resulted from the merger. The Commissioner of Internal Revenue determined that, upon receipt of Gennett's property as a result of the merger, appellee realized gain, and that such gain was recognizable for income and excess-profits tax purposes. He accordingly determined and assessed a deficiency in respect of appellee's income and excess-profits taxes for 1934. Appellee paid the assessed amount ($73,-557.08) on March 3, 1938, to Nat Rogan, the then Collector of Internal Revenue for the Sixth Collection District of California, and, its claim for refund having been denied, brought an action against Rogan to recover said amount as having been illegally assessed and collected. Rogan answered, jury trial was waived, the facts were stipulated, the case was submitted, and judgment was entered in appellee's favor. From that judgment Rogan took this appeal.[3]

The parties stipulated (1) that "the deficiency in Federal income and excess-profits taxes paid by plaintiff [appellee] on March 3, 1938, was occasioned by the Commissioner of Internal Revenue's determination that gain or loss was recognizable for Federal income and excess-profits tax purposes upon receipt by plaintiff of [Gennett's] property as a result of the merger;"

(2) that if that determination was incorrect, "plaintiff is entitled to recover as prayed for;" and (3) that if that determination was correct, "the said deficiency was correctly computed * * * and plaintiff is not entitled to recovery in this action." The facts are these:

On February 1, 1921, Clara Howes Mackey leased to appellee for a term of 99 years certain real property in Los Angeles, California. On March 1, 1921, Arthur N. Pelton leased to appellee for a term of 99 years other real property in Los Angeles. In May, 1922, appellee caused Gennett to be organized for the purpose of holding legal title to the leases. On July 17, 1922, appellee transferred the leases to Gennett in exchange for all of Gennett's capital stock. At all times during Gennett's existence appellee owned all of Gennett's outstanding stock. On August 1, 1922, Gennett subleased the Mackey and Pelton properties to appellee for a term of 15 years ending July 21, 1937. In 1922 Gennett issued bonds in the sum of $200,000 and, with the proceeds thereof, constructed a building on the Pelton property. On July 1, 1923, appellee and Gennett subleased the Pelton property to Bullock's, a California corporation, for a term of 25 years ending June 30, 1948. On May 1, 1924, that term was extended to April 30, 1984. Also, on May 1, 1924, appellee and Gennett subleased the Mackey property to Bullock's for a term of 60 years ending April 30, 1984.

---

shares of the consolidated or surviving corporation. The agreement also may provide for the distribution of cash, property, or securities, in whole or in part, in lieu of shares, to shareholders of the constituent corporations or any class of them; * * *

"(2) The agreement shall be signed by the president or a vice-president and the secretary or an assistant secretary of each corporation, and acknowledged by the officers executing the same on behalf of their respective corporations.

"(3) The agreement must be approved by the vote of the holders of not less than two-thirds of the issued and outstanding shares of each class, even though their right to vote be otherwise restricted or denied, of each of the constituent corporations, * * *. After such approval by the directors and shareholders has been given, the president or a vice-president and the secretary or an assistant secretary of each corporation shall execute a certificate,

which shall be verified by their oath * * *

"(5) * * * The agreement so approved, executed and acknowledged and the certificates of its approval shall be filed with the secretary of state, and shall thereupon become effective, and the several parties thereto shall be one corporation. * * *

"(7) * * * Upon the merger or consolidation, as provided herein, the separate existence of the constituent corporations shall cease, except that of the surviving corporation in case of merger, and the consolidated or surviving corporation shall succeed, without other transfer, to all the rights and property of each of the constituent corporations, and shall be subject to all the debts, and liabilities of each, in the same manner as if the surviving or consolidated corporation had itself incurred them."

[2] California Civil Code, § 361(7), supra.

[3] Subsequently, Rogan having died, his executrix was substituted as appellant.

Gennett's officers and directors were employees of appellee. Gennett had no office separate and apart from appellee, had no assets except the leases, had no bank account and had no employees except its officers and directors. Its bookkeeping was done by an employee of appellee. Its debts were paid by appellee, and such payments were credited to appellee on Gennett's books. All rentals accruing to Gennett under the subleases were collected by a bank as trustee for Gennett and were applied by the bank to the retirement of Gennett's bonds and to the payment of interest thereon and taxes on the leased properties. For the years 1922, 1923 and 1924, appellee and Gennett filed separate income tax returns. For the years 1925 to 1933, inclusive, they filed consolidated returns. In 1934, prior to the merger, appellee transferred certain accounts to Gennett, to be collected in the name of Gennett. Some of the accounts were so collected. The others were transferred back to appellee. Gennett carried on no activities except as hereinabove set forth.

The merger was effected by an agreement executed, approved and filed in conformity with § 361, supra. The agreement was executed and approved on July 31, 1934. It was filed and became effective on August 1, 1934. It provided, in substance, that appellee should pay all of Gennett's debts and surrender for cancellation all of Gennett's stock, and that all of Gennett's property should be distributed to appellee. These provisions were carried out. As a result, Gennett was completely liquidated.[4]

Thus the property distributed to appellee was an amount distributed in complete liquidation of a corporation. Section 115(c) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 703,[5] provides that amounts so distributed shall be treated as in full payment in exchange for the stock, and that the gain or loss to the distributee resulting from such exchange shall be de-

termined under § 111, but shall be recognized only to the extent provided in § 112, 26 U.S.C.A. Int.Rev.Acts, pages 691, 692. Here the Commissioner determined that gain had resulted to the distributee (appellee) and determined (computed) the amount of such gain under § 111. By the stipulation referred to above, the correctness of that computation was conceded. The question here is, To what extent was the gain resulting to appellee recognizable under § 112? Section 112 provides that, with specified exceptions, the entire amount of such gain shall be recognized. The exceptions claimed to be applicable here are those specified in paragraphs (3) and (4) of § 112(b), reading as follows:

"(3) *Stock for stock on reorganization.*[6] No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

"(4) *Same—Gain of corporation.* No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization."

■ In this case there was a reorganization (a statutory merger)[7] the parties to which were corporations (appellee and Gennett). In pursuance of the plan of reorganization, stock in Gennett was exchanged by appellee for property of Gennett. There was, however, no exchange of stock or securities for stock or securities. Therefore paragraph (3) is inapplicable. Neither corporation exchanged any property for stock or securities in another corporation. Therefore paragraph (4) is inapplicable. We conclude that the entire amount of the gain resulting to appellee was recognizable under § 112.

---

4 Cf. Burnet v. Riggs National Bank, 4 Cir., 57 F.2d 980; France Co. v. Commissioner, 6 Cir., 88 F.2d 917; Cerro De Pasco Copper Co. v. United States, 13 F.Supp. 633, 82 Ct.Cl. 442; Trenton Oil Co. v. United States, D.C.E.D. Mich., 41 F.Supp. 887, affirmed in 6 Cir., 122 F.2d 1023; Frelmort Realty Corp. v. Commissioner, 29 B.T.A. 181; Gutbro Holding Co. v. Commissioner, 47 B.T.A. 374.

5 Title 1 (§§ 1–322) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts,

pages 664–757, relates to income taxes. Section 702, 26 U.S.C.A. Int.Rev.Acts, page 789, relates to excess-profits taxes. It provides that all provisions of Title 1 except those of § 131, 26 U.S.C.A. Int. Rev.Acts, page 713, shall be applicable in respect of excess-profits taxes, insofar as not inconsistent with § 702.

6 Section 112(g) defines "reorganization" as including a statutory merger or consolidation.

7 See footnote 6.

Appellee says that, if the merger agreement had provided that appellee should issue to itself shares of stock in itself in exchange for Gennett's property, such exchange would fall within paragraph (3) and no gain would be recognized. Whether that is true or not need not be considered, for the merger agreement did not so provide.

Appellee says that, having resulted from a statutory merger, its acquisition of Gennett's property was an acquisition by operation of law. Whether that is true or not need not be considered, for, even if true, it does not alter the fact that recognizable gain resulted to appellee upon such acquisition.[8]

Appellee contends that there was not and could not be (1) a merger of Gennett into appellee and (2) a liquidation of Gennett. We reject this contention and hold that there could be and was both a merger and a liquidation.[9]

■■ Appellee asks us to disregard the fact that, prior to the merger, appellee and Gennett were separate entities.[10] The trial court thought that this should be done. We do not think so. The following language, used in New Colonial Ice Co. v. Helvering, 292 U.S. 435, 442, 54 S.Ct. 788, 791, 78 L.Ed. 1348, is applicable here:

"As a general rule a corporation and its stockholders are deemed separate entities [11] and this is true in respect of tax problems.[12] Of course, the rule is subject to the qualification that the separate identity may be dis-regarded in exceptional situations where it otherwise would present an obstacle to the due protection or enforcement of public or private rights.[13] But in this case we find no exceptional situation—nothing taking it out of the general rule. On the contrary, we think it a typical case for the application of that rule." [14]

Judgment reversed.

---

[8] Gutbro Holding Co. v. Commissioner, supra.

[9] Burnet v. Riggs National Bank, supra; Frelmort·Realty Corp. v. Commissioner, supra; Gutbro Holding Co. v. Commissioner, supra.

[10] Thus, in effect, we are asked to say that appellee and Gennett were at all times—before as well as after the merger —a single corporation; that Gennett's property was and always had been appellee's property; that the merger was a useless and meaningless form; and that appellee acquired nothing thereby.

[11] Citing Pullman's Palace Car Co. v. Missouri Pacific R. Co., 115 U.S. 587, 6 S.Ct. 194, 29 L.Ed. 499; Donnell v. Herring-Hall-Marvin Safe Co., 208 U.S. 267, 28 S.Ct. 288, 52 L.Ed.481; United States v. Delaware, L. & W. R. Co., 238 U.S. 516, 35 S.Ct. 873, 59 L.Ed. 1438; Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634; Klein v. Board of Supervisors, 282 U.S. 19, 51 S.Ct. 15, 75 L.Ed. 140, 73 A.L.R. 679.

[12] Citing Klein v. Board of Supervisors, supra; Dalton v. Bowers, 287 U.S. 404, 53 S.Ct. 205, 77 L.Ed. 389; Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397; Burnet v. Commonwealth Improvement Co., 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399.

[13] Citing United States v. Lehigh Valley R. Co., 220 U.S. 257, 31 S.Ct. 387, 55 L.Ed. 458; Southern Pacific Co. v. Lowe, 247 U.S. 330, 38 S.Ct. 540, 62 L. Ed. 1142; Chicago, M. & St. P. R. Co. v. Minneapolis Civic & Commerce Ass'n, 247 U.S. 490, 38 S.Ct. 553, 62 L.Ed. 1229; Gulf Oil Corp. v. Lewellyn, 248 U.S. 71, 39 S.Ct. 35, 63 L.Ed. 133.

[14] See, also, United States v. Phellis, 257 U.S. 156, 172–175, 42 S.Ct. 63, 66 L. Ed. 180; Deputy v. DuPont, 308 U.S. 488, 494, 60 S.Ct. 363, 84 L.Ed. 416; Moline Properties v. Commissioner, 319 U.S. 436, 438–441, 63 S.Ct. 1132, 87 L. Ed. 1499.